**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| JOHN DOE | : CIVIL ACTION NO. |
| Plaintiff, | : No. 2:23-cv-00299-GAM |
| v. | : |
| HAVERFORD COLLEGE | : |
| Defendant. | : |

**DEFENDANT HAVERFORD COLLEGE'S BRIEF IN OPPOSITION
TO PLAINTIFF'S MOTION FOR A TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Defendant Haverford College submits this Brief in Opposition to Plaintiff's Motion for a

Temporary Restraining Order and Preliminary Injunction.

Respectfully submitted,

**SAUL EWING LLP**

Date: February 2, 2023

s/ *Joshua W. B. Richards*
Joshua W. B. Richards/204315
Levi R. Schy/329199
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA  19102
(215) 972-7737 (Richards)
(215) 972-7803 (Schy)
Joshua.Richards@saul.com
Levi.Schy@saul.com
*Attorneys for Defendant Haverford College*

## TABLE OF CONTENTS

INTRODUCTION...................................................................................................... 1

FACTUAL BACKGROUND ..................................................................................... 4

    I.   Plaintiff's separation from Haverford College's athletic team. ............................. 4

    II.  Relevant College policies. ................................................................................. 8

LEGAL STANDARD ................................................................................................ 9

ARGUMENT............................................................................................................ 10

    I.   Plaintiff is not likely to succeed on the merits of his breach of contract claim because the operative College policy gives broad discretion to coaches to control their rosters........ 10

    II.  Plaintiff has not shown that he will suffer irreparable harm............................................ 13

        A.  Loss of athletic participation does not constitute irreparable harm. ............................ 13

        B.  The case law cited by Plaintiff on the irreparable harm standard is readily distinguishable. .......................................................................................................... 15

        C.  Plaintiff's delay in seeking a legal remedy weighs against a holding that he has shown that he will suffer irreparable harm absent injunctive relief. ......................................... 17

    III.  Plaintiff's requested relief will result in significant harm to Haverford. ...................... 18

    IV.  The public interest weighs in favor of denying injunctive relief. ................................. 19

CONCLUSION ......................................................................................................... 20

## **TABLE OF AUTHORITIES**

FEDERAL CASES

*A.M. by & through McKalip v. Pa. Interscholastic Athletic Ass'n, Inc.*,
  No. 1:20-CV-290-SPB, 2020 WL 5877617 (W.D. Pa. Oct. 1, 2020)......................................15

*Acierno v. New Castle County*,
  40 F.3d 645 (3d Cir.1994)...................................................................................................14

*Advance Am. v. FDIC*,
  257 F. Supp. 3d 56 (D.D.C. 2017) ........................................................................................4

*Beberman v. U.S. Dep't of State*,
  675 F. App'x 131 (3d Cir. 2017) ....................................................................................14, 15

*Contour Data Sols. LLC v. Gridforce Energy Mgmt. LLC*,
  No. CV 20-3241, 2021 WL 5536266 (E.D. Pa. Sept. 2, 2021) ...................................4, 17, 18

*D.M. by Bao Xiong v. Minn. State High Sch. League*,
  917 F.3d 994 (8th Cir. 2019) ..............................................................................................16

*David v. Neumann Univ.*,
  187 F. Supp. 3d 554 (E.D. Pa. 2016) ..................................................................................11

*Doe v. The Trustees of the Univ. of Pa.*,
  270 F. Supp. 3d 799 (E.D. Pa. 2017) ..................................................................................11

*Doe v. Univ. of Cincinnati*,
  No. 1:15-CV-600, 2015 WL 5729328 (S.D. Ohio Sept. 30, 2015) ...............................17, 20

*Dziewa v. Pennsylvania Interscholastic Athletic Ass'n, Inc.*,
  No. CIV.A. 08-5792, 2009 WL 113419 (E.D. Pa. Jan. 16, 2009) .............................13, 14, 15

*Ganden v. Nat'l Collegiate Athletic Ass'n*,
  No. 96 C 6953, 1996 WL 680000 (N.D. Ill. Nov. 21, 1996)..................................................17

*Kimberg v. Univ. of Scranton*,
  No. 06-cv-1209, 2007 WL 405971 (M.D. Pa. Feb. 2, 2007)............................................10, 11

*Kos Pharm., Inc. v. Andrx Corp.*,
  369 F.3d 700 (3d Cir. 2004).................................................................................................9

*Mattison v. East Stroudsburg Univ.*,
  No. 3:12-CV-2557, 2013 WL 1563656 (M.D. Pa. Apr. 12, 2013).........................................15

*O'Keefe v. Lehigh Univ.*,
No. 19-cv-0884-JMY, 2023 WL 137457 (E.D.Pa. Jan. 9, 2023) ....................................19, 20

*Richmond v. Youngstown State Univ.*,
No. 4:17CV1927, 2017 WL 6502833 (N.D. Ohio Sept. 14, 2017) ........................................16

*T.W. by and through Waltman v. S. Columbia Area Sch. Dist.*,
No. 4:20-CV-01688, 2020 WL 5751219 (M.D. Pa. Sept. 25, 2020)..........................15, 16, 20

*URL Pharma, Inc. v. Reckitt Benckiser Inc.*,
No. CV 15-0505, 2016 WL 1592695 (E.D. Pa. Apr. 20, 2016) .......................................10, 14

*Zaslow v. Coleman*,
103 F. Supp. 3d 657 (E.D. Pa. 2015) ................................................................................9, 10

STATE CASES

*McShea v. City of Phila.*,
995 A.2d 334 (Pa. 2010) ....................................................................................................10

*Murphy v. Duquesne Univ. Of The Holy Ghost*,
777 A.2d 418 (Pa. 2001) ....................................................................................................11

*Schulman v. Franklin and Marshall Coll.*,
538 A.2d 49 (Pa. Super. 1988)......................................................................................19, 20

*Swartley v. Hoffner*,
734 A.2d 915 (Pa. Super. Ct. 1999)...............................................................................19, 20

## **INTRODUCTION**

After the coach of his Haverford College ("Haverford" or the "College") track and field team concluded that Plaintiff John Doe's[1] ("Plaintiff" or "Doe") presence on the team would be too disruptive to team cohesion and morale to permit, Doe filed this lawsuit to ask the Court to force Plaintiff's coach to allow him on the team. Although Plaintiff regrettably does not refer to it anywhere in his submissions, Haverford has a written policy that addresses this situation precisely:

> Being a varsity athlete at Haverford College is a privilege and not a right. **Varsity coaches have broad discretion in determining the individuals who make up his or her team's active roster. This discretion includes, but is not limited to, removal from the roster at any time.** Should you feel that you were removed from the team unjustly, you can submit an appeal to the director of athletics.

Ex. C to Richards Declaration, Haverford College Student-Athlete Handbook, at 3 (emphasis added). To underscore the situation here, the parties and the Court have been asked by Plaintiff to expend significant time and resources to litigate a question that is answered squarely and unambiguously by a written Haverford policy. To make matters even more striking, Plaintiff has demanded that the Court force Doe's coach to make him *captain* of the same teammates whose aversion to training and competing with Doe was the basis of the coach's action in the first place. Plaintiff asks for all of this relief, on an emergency basis, after waiting for five of the ten weeks of the winter track season to pass before filing his emergency motion.

The facts of this case, set forth in more detail below and in the attached affidavits, show that Plaintiff, for reasons fair or unfair, is deeply disliked by his former teammates. As a result of their experiences with him, Plaintiff's former teammates became stridently uncomfortable with his

---

[1] After reviewing controlling Third Circuit authority, Haverford does not believe that Plaintiff's use of a pseudonym in this matter meets the legal standard and intends to file an opposition to his Motion to Proceed Under Pseudonym (ECF No. 5).

continued presence on the team. Co-captains of the team confronted both Plaintiff and the coach with these concerns, and the coach came to the reasoned conclusion, informed by decades of experience and conversations with Plaintiff and other team members, that the team could not successfully proceed with Plaintiff on the squad.

Plaintiff presents his arguments as if his unbridgeable right to take part in College athletics is table stakes, but of course it is the opposite. As a student at Haverford College, Plaintiff is not guaranteed participation in any student extra-curricular activity, including athletics. To try to avoid this straightforward fact, Plaintiff does two things: (1) he pretends no policy squarely addressing athletic participation exists (and in so doing, fails to present it to the Court); and (2) he cooks up a far-fetched and logically untenable breach of contract theory positing that because the College's Sexual Misconduct Policy contemplates removal from an athletic team as one of several potential sanctions that *may be* imposed upon individuals *found to have violated that policy*, he can *only* be removed from the team if he is found to have violated that policy. In other words, Plaintiff's mistaken argument is that because the College's Sexual Misconduct Policy *could* apply had a formal complaint been filed, it is the only policy that *can* apply. Based on that theory, Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 4) requests that this Court take the extraordinary step of directing Haverford to affirmatively reinstate Plaintiff to the team roster that he stepped away from nearly a year ago.

Plaintiff's claim has no merit. Plaintiff's coach had a good reason for not allowing Doe to participate on his team – the coach thought it would cause his team to fall apart in light of his conversations with his other athletes. *See* Donnelly Affidavit at ¶¶ 7, 11, 15-18.  But the coach did not *need* a good reason. By policy and by societal custom, sports coaches have extraordinarily broad discretion to control their rosters. They can cut players they don't like, they can cut players

who reflect poorly on the team, and they can cut players who don't play in a way they like, irrespective of talent or work ethic, among an nearly infinite list of other reasons. It is Plaintiff's burden in this case to demonstrate that by not allowing him to participate on the team, his coach breached a specific promise made to Plaintiff by the College, and nothing of the sort can be found in Plaintiff's Complaint or the College's policies (which hold, as noted, precisely the opposite).

Plaintiff's repeated and strenuous arguments that the Sexual Misconduct Policy governs this case do not make it so.  The Sexual Misconduct Policy is irrelevant here because by its plain terms it does not apply, try as Plaintiff might to push a square peg into a round hole. It is not in dispute that Plaintiff is not the subject of any formal complaint under that policy, an essential first step to triggering the policy. *See infra* at 9. He has not been subject to investigation pursuant to that policy nor has he ever been sanctioned under that policy. His exclusion from the team was never framed as a punishment or sanction, and was never justified by reference to any conclusion, one way or the other, as to whether Plaintiff engaged in any misconduct at all.

Despite his burden to do so, Plaintiff fails to identify a single contractual term that Haverford breached by way of the coach's decision to deny his requests to rejoin the team, all while wholly ignoring the impact of contractual terms that **do** apply here and explicitly permit the coach's decision. Plaintiff has latched onto a theory that the College violated a policy that was never invoked and never applied because he has no other argument. But the fact is that the College didn't violate *any* of its policies.

Nor is the harm Plaintiff suggests he will suffer "irreparable" in any legal sense of the word. As discussed below, the case law makes clear that the inability to participate in student activities – including athletics – does not constitute irreparable harm. Just as important, Plaintiff has created any urgency in this case all on his own by waiting more than five weeks after he learned

with finality he would not be allowed on the team to seek emergency relief (he knew far longer than that that he was not permitted to practice, etc.). The Court should view with considerable skepticism Plaintiff's contention that "such drastic, speedy action" is needed from the Court when the circumstances failed to elicit such action from Plaintiff. *See Lanin v. Borough of Tenafly*, 515 F. App'x 114, 117–18 (3d Cir. 2013).

The College finds it deeply regrettable that Plaintiff has chosen to litigate his coach's decision, but now that he has, it is imperative that the Court establish a precedent that will not encourage future and repeated judicial review of matters as mundane as roster management. The exercise of jurisdiction here by this Court is an inappropriate remedy for Plaintiff's grievances and his request for injunctive relief should be denied.

## **FACTUAL BACKGROUND**[2]

### I.   **Plaintiff's separation from Haverford College's athletic team.**

Plaintiff is a current student at Haverford College who competed on the varsity track and field team during his first two years at the College. Compl. (ECF No. 1) ¶¶ 19, 25; Ex. A to Richards Declaration, Affidavit of Tom Donnelly, ¶ 3. At some point during February, 2022, the co-captains of the team confronted Plaintiff regarding their personal observations of what they deemed to be offensive behaviors toward women[3] coupled with even more concerning reports

---

[2] Unlike on a motion to dismiss, the allegations in Plaintiff's Complaint here are not entitled to the presumption of truth. On a motion for preliminary injunction, a plaintiff must *prove* with evidence of record—not merely plead—a likelihood of success on the merits. *See, e.g., Advance Am. v. FDIC*, 257 F. Supp. 3d 56, 64 (D.D.C. 2017) (comparing applicable standards).

[3] Based on the allegations in his Complaint, Plaintiff has not proven any limitation on the scope of his former teammates' concerns about him.  Based on the concerns reported to their coach (*See* Donnelly Affidavit), the teammates' reasons for their discomfort with Plaintiff's presence on the team were not limited to allegations of sexual misconduct that would fall under the jurisdiction of the College's Sexual Misconduct Policy. Plaintiff has failed to carry his burden of proof otherwise and is not entitled to any presumption of truth at this stage in the proceedings.

suggesting that Plaintiff may have engaged in sexual misconduct,[4] and also reported their concerns to the team's head coach, Coach Donnelly.[5] Donnelly Affidavit at ⁋ 4. Following this conversation[6] and a subsequent conversation between Plaintiff and the coach, Plaintiff agreed to step away from participation on the team. Compl. ⁋ 37; Donnelly Affidavit at ⁋ 6. The coach agreed with Plaintiff's decision to leave the team as Plaintiff's interactions with his teammates and his presence on the team had become a distraction and the coach believed Plaintiff's departure to be in the best interest of all involved, team cohesion being a crucial component of the program's success. Donnelly Affidavit at ⁋ 7.

Later in the Spring 2022 season, Plaintiff met with his coach and requested to rejoin the team. Compl. ⁋ 45; Donnelly Affidavit at ⁋ 8. Coach Donnelly consulted with the co-captains and members of the team who said they remained uncomfortable with Plaintiff's participation on the team, and explained that they would quit *en masse* if Plaintiff were to be permitted to rejoin. Donnelly Affidavit at ⁋⁋ 9-10. The coach ultimately decided against granting Plaintiff's request after making a reasoned judgment that Plaintiff's participation on the team would be a detriment

---

[4] No formal complaint was ever filed against Plaintiff alleging he had engaged in sex-based misconduct. Plaintiff was never charged with a violation of the College's Sexual Misconduct Policy, nor was Plaintiff ever subject to any investigation, sanction, or any other procedures under the Sexual Misconduct Policy. Compl. ⁋⁋ 42-43; Donnelly Affidavit at ⁋ 5.

[5] Coach Donnelly is a highly experienced coach with a track record of success for over 47 seasons. *See* https://www.haverfordathletics.com/sports/mtrack-out/coaches/donnelly_tom?view=bio.

[6] Confrontation of this sort is a deeply-embedded feature of Haverford's culture and educational environment.  For well over a century, the Haverford College Honor Code has defined how students at the College are to engage with each other in terms of peaceful confrontation concerning all aspects of life at Haverford. *See* https://honorcouncil.haverford.edu/the-code/what-is-the-code/. According to the Honor Code, "[u]pon encountering actions, values, or words" that a student finds to be inconsistent with the Honor Code, students are encouraged to "initiate dialogue with the goal of repairing the damage that these actions, values, or words may have caused while also encouraging the restoration of our community values." *See* https://honorcouncil.haverford.edu/the-code/. In response, a confronted student is expected to "actively listen[] to acknowledge and understand the harm experienced by the confronting party in order to facilitate the restorative process." *Id.* It was in the spirit of the Honor Code that the team's co-captains raised their concerns about Plaintiff to Plaintiff and their coach.

to the team and would hinder the team's ability to perform at its highest potential. *Id.* at ⁋ 11. As with all varsity head coaches at Haverford, Coach Donnelly has broad discretion to manage his team's roster, including making the decision to remove athletes from the roster at any time. *See* Ex. B to Richards Declaration, Affidavit of Danielle Lynch at ⁋⁋ 3-5; Student-Athlete Handbook at 3.

In late March 2022, Coach Donnelly attended a meeting between himself, Plaintiff, the College's Title IX Coordinator, the Athletic Director, a Senior Associate Dean of the College, and the co-captains of the team. Compl. ⁋ 56. During this meeting the co-captains repeated that they and their teammates opposed Plaintiff rejoining the team, again citing Plaintiff's behavior including instances of offensive behavior toward women. Donnelly Affidavit at ⁋ 12; Lynch Affidavit at ⁋ 7. The coach upheld his decision that Plaintiff's participation on the team would not be in the best interest of Plaintiff, his teammates individually, or the team as a whole and denied Plaintiff's request to rejoin the team. Donnelly Affidavit at ⁋ 12.

In Fall 2022, Plaintiff's parents and lawyer contacted the College to request that Plaintiff be permitted to rejoin the team. Compl. ⁋ 95. In response, the College outlined the steps that would need to be taken for this request to be considered, including a facilitated discussion with the coach and co-captains of the team to explore whether the circumstances had changed since the previous spring, and whether Plaintiff could positively contribute to the team dynamic and performance. Lynch Affidavit at ⁋ 8.

On October 24, 2022, the College facilitated a conversation between Plaintiff and Coach Donnelly with a trained facilitator present. Compl. ⁋ 107. The College then facilitated a discussion on December 2, 2022 between Plaintiff and the team co-captains. Compl. ⁋ 112. The co-captains again raised concerns that they and other members of the team had and expressed their discomfort

with the possibility of Plaintiff rejoining the team. Donnelly Affidavit at ¶ 14. Following the October 24 and December 2 meetings, Coach Donnelly made the decision that it would not be in Plaintiff's best interests or the best interests of the team for Plaintiff to rejoin the team. *Id.* at ¶ 15. **The coach's decision was based on his interactions with Plaintiff and his observation of Plaintiff's repeated, failed attempts to forge a working relationship with the team members and co-captains**. *Id.* at ¶¶ 15-18. It was evident to Coach Donnelly that Plaintiff's presence on the team would derail the team dynamic and severely limit the team's ability to succeed. *Id.* In a December 19, 2022 meeting between Plaintiff, the Director of Athletics, and the Assistant Director of Athletics, the Director of Athletics confirmed the coach's final decision and communicated to Plaintiff that coaches at the College have full autonomy of roster decisions. Compl. ¶¶ 126-27; Lynch Affidavit at ¶ 10.

To make things perfectly clear, the College is agnostic with respect to whether Doe actually engaged in the conduct that his teammates found offensive and inappropriate. His teammates' conclusions about his character may be fair and they may be unfair. The reality is that the College does not and cannot police the social relationships of its students and it does not adjudicate questions of whether someone is or is not a good teammate as part of any conduct process. The College *does* adjudicate formal complaints of misconduct when they are made, but no such complaint was made here, so the College has drawn no conclusions about Doe's conduct. Indeed, the College presumes Doe lacks responsibility for any misconduct until a formal process concludes otherwise. *See* Compl. Ex. A at 14. This case, however, is not about what the College thinks about Doe's culpability or his character, or even what his coach thinks of his character. It is about whether, in Doe's coach's judgment, Doe can participate on his team without the rest of the team being too distracted to train and compete effectively or too upset to remain on the team at all.

Doe characterizes his inability to join the team as punitive, but it is not. It is a remedy fashioned by his coach with the belief that that particular solution gave his team the best chance to succeed. No doubt it is a solution that burdens Doe more than the alternative solution, but Coach Donnelly reasonably decided that allowing Doe to rejoin the team would place an equivalent burden on a far greater number of people. Here, Doe unfairly conflates that burden with a punishment; making a judgment in favor of one course of action over another, however, does not ipso facto equate to a sanction, and Doe was not sanctioned here.

## II.    Relevant College policies.

Coach Donnelly's decision regarding the inner workings of his team and Plaintiff's eligibility for a roster position was made based on Haverford's policies governing athletics participation and roster management. *See* Student-Athlete Handbook; Donnelly Affidavit; Lynch Affidavit. The coach's decision was guided by the applicable College policy to "to establish a positive competitive environment which will foster the intellectual, physical and personal development of each student athlete based upon the values of sportsmanship, integrity, leadership, trust, respect, loyalty and concern for others." Student-Athlete Handbook at 3. Likewise, the College's athletic department policy grants varsity coaches broad discretion in determining the individuals who make up his or her team's active roster.

> Being a varsity athlete at Haverford College is a privilege and not a right. Varsity coaches have broad discretion in determining the individuals who make up his or her team's active roster. This discretion includes, but is not limited to, removal from the roster at any time. Should you feel that you were removed from the team unjustly, you can submit an appeal to the director of athletics.

*Id.* Absent showing that the College has violated a clearly articulated duty it owed him, Plaintiff cannot show he has a likelihood of success on his claim.

While Plaintiff points out that the Sexual Misconduct Policy includes certain sanctions that *may* be applied "[w]hen a Respondent accepts or is found responsible for violating [the] Sexual Misconduct Policy," (Compl. Ex. A at 24) it does not follow that those listed actions are *only* to be applied in the context of sanctions for sexual misconduct cases, or that similar actions cannot be applied in the context of other aspects of student life at the College. In fact, the explicit language of the Sexual Misconduct Policy makes clear that the policy does not apply here, where Plaintiff was not and is not the subject of a formal complaint or any investigation or adjudication. *See id.* at 7 (defining a "Formal Complaint" as a document which triggers "initiation of the College's Resolution procedures consistent with this Sexual Misconduct Policy"); *id.* at 12 ("The timeframe for the College's Resolution Process begins with the filing of a Formal Complaint.").

Plaintiff's mistaken theory is instead that students who have been the subject of sexual misconduct rumors are required to be immune from any adverse action not predicated on the Sexual Misconduct Policy, and cannot, *for any other reason*, be subject to any limitations on extra-curricular involvement. The suggestion that the College must or could or even should operate under such constraints strains credulity and common sense.

## **LEGAL STANDARD**

Granting "[p]reliminary injunctive relief is 'an extraordinary remedy' and 'should be granted only in limited circumstances.'" *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (quoting *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1426-27 (3d Cir. 1994)). The standard for granting a temporary restraining order under Federal Rule of Civil Procedure 65 is the same as that for issuing a preliminary injunction. *See e.g. Zaslow v. Coleman*, 103 F. Supp. 3d 657, 662 (E.D. Pa. 2015). For both, a plaintiff must demonstrate: (1) a likelihood of success on the merits; (2) the probability of irreparable harm if the relief is not

granted; (3) that granting injunctive relief will not result in even greater harm to the other party; and (4) that granting relief will be in the public interest. *Id.*

An injunction requiring a defendant to take some affirmative action is considered a mandatory injunction, which is "looked upon disfavorably and [is] generally only granted in compelling circumstances." *URL Pharma, Inc. v. Reckitt Benckiser Inc.*, No. CV 15-0505, 2016 WL 1592695, at *3 (E.D. Pa. Apr. 20, 2016) (cleaned up). Because a mandatory injunction "will alter the status quo, the party seeking the injunction must meet a higher standard of showing irreparable harm in the absence of an injunction." *Id.* (quoting *Bennington Foods LLC v. St. Croix Renaissance Grp., LLP*, 528 F.3d 176, 179 (3d Cir. 2008)).

Plaintiff has not competed for the College's athletic program since he agreed to step back from the team in the winter of 2022. Plaintiff's request that this Court act affirmatively to supplant the wishes of the coach and team members to install Plaintiff on the team, *as a captain* no less, is a clear deviation from the status quo. As such, Plaintiff faces a heightened burden which, as set forth in further detail below, he fails to meet.

## ARGUMENT

I.   **Plaintiff is not likely to succeed on the merits of his breach of contract claim because the operative College policy gives broad discretion to coaches to control their rosters.**

A successful breach of contract claim requires a plaintiff to prove: (1) the existence of a contract; (2) that defendant breached said contract; and (3) plaintiff suffered damages from the breach. *See McShea v. City of Phila.*, 995 A.2d 334, 340 (Pa. 2010) (citing *Hart v. Arnold*, 884 A.2d 316, 332 (Pa. Super. Ct. 2005)). Under Pennsylvania law, relationships between private colleges and their enrolled students are contractual in nature. *Kimberg v. Univ. of Scranton*, No. 06-cv-1209, 2007 WL 405971, at *3 (M.D. Pa. Feb. 2, 2007) (citing *Swartley v. Hoffner*, 734 A.2d 915, 919 (Pa. Super. Ct. 1999)). The terms of such contracts are comprised of the "written

guidelines, policies, and procedures as contained in the written materials distributed to the student over the course of their enrollment in the institution." *Id.* To succeed on a breach of contract claim against a private university, a student-plaintiff "must point to **specific** undertakings in the [contract] that were not provided." *David v. Neumann Univ.*, 187 F. Supp. 3d 554, 558 (E.D. Pa. 2016) (quoting *Miller v. Thomas Jefferson Univ. Hosp.*, 908 F.Supp.2d 639, 655 (E.D. Pa. 2012)) (emphasis added).

Courts applying Pennsylvania law have held that, in interpreting the provisions and intent of a contract between a private college or university and its enrolled students, a court must consider specific contractual terms in the larger context of a school's policies and procedures as a whole. *See Doe v. The Trustees of the Univ. of Pa.*, 270 F. Supp. 3d 799, 812 (E.D. Pa. 2017) (declining to consider specific terms of a university's disciplinary procedures in isolation); *Murphy v. Duquesne Univ. Of The Holy Ghost*, 777 A.2d 418, 432 (Pa. 2001) ("Simply put, the parties' contractual intent cannot be gleaned by ignoring all but one sentence in the Contract, and then reading that sentence out of context.").

Plaintiff is unlikely to succeed on the merits of his breach of contract claim because he fails to show that the College breached any duty owed to him. He does not identify any specific contractual terms that Haverford failed to follow, and, when considering the relationship between the parties as a whole, it is clear that Haverford breached no duty to Plaintiff. Doe's claim departs from these standards by patently ignoring the plainly applicable policy provision in favor of relying on another inapplicable policy provision, intentionally removed from the larger context of the entirety of the College's policies and procedures.

The specific promise at play here is the College's plain statement that "*Varsity coaches have broad discretion in determining the individuals who make up his or her team's active roster.*

11

*This discretion includes, but is not limited to, removal from the roster at any time.*" Student-Athlete Handbook at 3.  That provision is the beginning and the end of the analysis here.

Plaintiff's tortured theory ignores that plain language and rests instead on an inapplicable provision within the Sexual Misconduct Policy that includes "[r]emoval from organization, team and/or committee" and "[r]evocation of leadership or supervisory position" as *potential* sanctions *for individuals who are adjudicated to have violated the Sexual Misconduct Policy*. In doing so, Plaintiff asks the Court to join him in making an illogical leap to determine that, unsupported by the many other policies and procedures to which he is subject under his contract with the College, a full adjudication resulting in a finding that a student has violated the Sexual Misconduct Policy is the *only* conceivable circumstance under which a student, including Plaintiff, could be prevented from joining a sports team or holding a leadership position on that team.

When viewed in the larger context of all College policies and procedures applicable to Plaintiff, it is clear that (1) the Sexual Misconduct Policy does not apply here, and (2) the contract between Plaintiff and the College contemplates that Plaintiff is validly subject to exclusion from a varsity athletic team under circumstances other than full adjudication under the Sexual Misconduct Policy, including but not limited to the Student-Athlete Handbook, individual athletic team policies, and other policies governing intercollegiate athletics at the College, and at the considerable discretion of coaching staff.

Plaintiff attempts to distract by asserting his own views as to why his former teammates don't want him to on the team, but none of these purported reasons matter, and in many ways, they prove too much. It is not in dispute that Plaintiff's teammates have firmly decided they do not want Plaintiff on their team, for reasons correct or mistaken. In making roster decisions, the coach *must*

weigh what is in the best interests of the team, and it requires no leap to conclude that rostering a player with whom others on the team refuse to interact is unlikely to be a net gain for the team.

Coach Donnelly's decision not to grant Plaintiff's request to rejoin the team was rooted in the irreparable breakdown in Plaintiff's relationship with his former teammates, and the coach's reasoned judgment, informed by rigorous discussions with all parties and nearly half a century of experience cultivating positive, productive, and cohesive athletic teams at Haverford College. *See* Donnelly Affidavit at ¶¶ 7, 11, 15-18. Coach Donnelly determined that Plaintiff's inclusion on the team would create an environment where it would be impossible for the team, individually and as a group, to function and perform at the level expected of them.

Simply put, Plaintiff was not sanctioned at all by the College, let alone for alleged sexual misconduct, and the Sexual Misconduct Policy is irrelevant to his claim. Although it may not be evident to Plaintiff, the coach's decision was not a matter of discipline, but of operational policy necessary to run a productive and successful athletic team. Plaintiff's presence on the roster would cause the team to fall apart, so he was not allowed to participate. In any case, however, Plaintiff's failure to identify any contractual terms breached by Haverford is fatal to his claim. He fails to demonstrate a likelihood of success on the merits, and his request for injunctive relief should be denied.

## II.    Plaintiff has not shown that he will suffer irreparable harm.

### A.    Loss of athletic participation does not constitute irreparable harm.

To prove irreparable harm, Plaintiff must demonstrate imminent harm which cannot be redressed by a legal or an equitable remedy following a trial and a "clear showing of immediate irreparable injury." *Dziewa v. Pennsylvania Interscholastic Athletic Ass'n, Inc.*, No. CIV.A. 08-5792, 2009 WL 113419, at *3 (E.D. Pa. Jan. 16, 2009) (quoting *Acierno v. New Castle County*, 40 F.3d 645, 653 (3d Cir.1994)). To do so, Plaintiff "must 'demonstrate potential harm which cannot

be redressed by a legal or an equitable remedy following a trial.'" *Acierno*, 40 F.3d at 653 (quoting *Instant Air Freight Co., v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir.1989)). The word "irreparable" means "that which cannot be repaired, retrieved, put down again, atoned for." *Id.* (citations omitted). As discussed above, Plaintiff faces a higher burden on the irreparable harm element because the injunctive relief that he seeks would alter the status quo. *URL Pharma*, 2016 WL 1592695, at *3.

Plaintiff is not a Division I athlete pursuing a professional athletic career. He is not an Olympic hopeful. He is a student-athlete engaging in an extracurricular activity while a student in college. Among the other more than 140 extracurricular activities at the College are the Chess Club, the Classics Honor Society, and improv comedy groups. All of these activities are enjoyed by their participants, but missing any of them does not constitute irreparable harm such that a TRO is necessary to guarantee participation.

Courts have rejected similar arguments that the loss of a unique experience, even permanently, does not constitute irreparable injury. In *Beberman v. United States Department of State*, the Third Circuit declined to hold that plaintiff would be irreparably harmed if she were to "lose forever the opportunity and satisfaction of serving as a U.S. diplomat in Equatorial Guinea," and that plaintiff failed to show "that the legal process would not adequately redress any actual loss of benefits associated with her overseas assignment." 675 F. App'x 131, 134 (3d Cir. 2017) (citing *Morton v. Beyer*, 822 F.2d 364, 372–73 & n.13 (3d Cir. 1987). If permanently losing the opportunity and satisfaction of representing one's country as a diplomat overseas does not constitute irreparable harm, surely losing the opportunity to represent one's college in Division III athletic competition likewise fails to meet the standard of "extreme deprivation," *id.*, necessary for injunctive relief here.

It is accordingly not surprising that courts in this district have held that "the loss of an opportunity to play interscholastic athletics for one year does not constitute irreparable harm." *Dziewa*, 2009 WL 113419, at *7 (citing *Revesz ex rel. Revesz v. Pennsylvania Interscholastic Athletic Ass'n, Inc.*, 798 A.2d 830, 837 (Pa. Commw. Ct. 2002)). In *Dziewa*, this Court held that an athletic association's ruling that a high school wrestler was ineligible to participate in wrestling *for an entire year* did not rise to the level of irreparable harm necessary for a preliminary injunction. *Id.* Of course, in this case Plaintiff has waited until much of the season has passed to file suit, so his articulated deprivation is significantly less than that held insufficient in *Dziewa*.

Other courts in the Third Circuit and the Commonwealth of Pennsylvania have held the same. In *Mattison v. East Stroudsburg University*, the Middle District held that a university student did not demonstrate that he would suffer irreparable harm as a result of his season-long suspension from a university baseball team. *See* No. 3:12-CV-2557, 2013 WL 1563656, at *5 (M.D. Pa. Apr. 12, 2013). And in *A.M. by & through McKalip v. Pennsylvania Interscholastic Athletic Association, Inc.*, the Western District held that a student is not irreparably harmed by his or her inability to compete in interscholastic sports. *See* No. 1:20-CV-290-SPB, 2020 WL 5877617, at *4 (W.D. Pa. Oct. 1, 2020) (collecting cases holding same). As in *Dziewa*, *Mattison*, and *A.M.*, Plaintiff falls short on the irreparable harm standard from the outset.

**B.      The case law cited by Plaintiff on the irreparable harm standard is readily distinguishable.**

In *T.W. by and through Waltman v. Southern Columbia Area School District*, the Middle District of Pennsylvania held that plaintiff failed to establish a likelihood of success on the merits and that the risk of harm from interfering with the defendant's decision "sufficiently outweighs the risk that T.W. faces as a result of his suspension." No. 4:20-CV-01688, 2020 WL 5751219, at *8 (M.D. Pa. Sept. 25, 2020). The court held that public interest would be harmed by injunctive

15

relief and denied plaintiff's motion for a temporary restraining order. *Id.* at *9. The court in *T.W.* in turn based its irreparable harm analysis solely on *D.M. by Bao Xiong v. Minnesota State High School League*, 917 F.3d 994 (8th Cir. 2019), which is readily distinguishable. *D.M.* involved Title IX and Equal Protection claims through which male high school students challenged a state-wide high school athletic league rule which categorically prohibited boys from participating on high school competitive dance teams, and the court held that plaintiffs demonstrated a likelihood of success on the merits of their equal protection claim. *Id.* at 998, 1003. The *D.M.* holding was specifically limited to the specific facts of that case: "Students who are denied the opportunity to join their schools' sports teams because of their sex may suffer irreparable harm." *Id.* at 1003. Doe does not argue on this Motion that he is being held off the team "because of his sex;" he contends instead merely that the College has breached some policy by not allowing him to participate, so *D.M.* is inapposite.

The other, out-of-circuit cases cited by Plaintiff are similarly distinguishable and inappropriately applied in this context. *Richmond v. Youngstown State University* dealt with a university student who had been removed from the football team roster for past, non-university-related behavior, while the season was currently under way. No. 4:17CV1927, 2017 WL 6502833, at *1 (N.D. Ohio Sept. 14, 2017). There, the court explicitly noted that the plaintiff had been on the active roster and played for the university that academic year, a fact on which it focused heavily in its irreparable harm analysis with respect to the status quo. *Id*. Not so here, where Plaintiff has not been on the team roster for nearly a year (since he voluntarily resigned).

In *Doe v. University of Cincinnati*, plaintiff challenged his suspension from athletic participation on constitutional due process grounds, and the court's irreparable injury analysis was predicated on the injury of the constitutional harm, not the irreparability of participation in student

activities. *See* No. 1:15-CV-600, 2015 WL 5729328, at *3 (S.D. Ohio Sept. 30, 2015) ("If a constitutional right is being threatened or impaired, a finding of irreparable injury is mandated."). Still, the court held that plaintiff was not likely to succeed on the merits, that both the "harm to others" and "public interest" factors weighed in favor of defendants, and denied plaintiff's request for a temporary restraining order and preliminary injunction. *Id.* at *3-4.

Finally, in *Ganden v. National Collegiate Athletic Association*, the court based its holding that plaintiff's ineligibility from NCAA Division I swimming constituted irreparable harm on the fact that plaintiff was rated as one of the fastest swimmers in the United States, and that losing a year of competition as a freshman was "likely to inhibit his development as a swimmer during a critical point in his career." No. 96 C 6953, 1996 WL 680000, at *6 (N.D. Ill. Nov. 21, 1996). The court nevertheless denied plaintiff's motion for a preliminary injunction. *Id.* at *17. Here, Plaintiff has not shown that he faces similar circumstances as those in *Ganden*. Plaintiff is in his final semester at Haverford, willingly stepped back from the team during his penultimate year at the College, and has delayed seeking a legal remedy to his exclusion from the team. Nothing in the record indicates that Plaintiff performs at an athletic level comparable to the "elite level" of the plaintiff in *Ganden*, a fact that was crucial to the court's analysis there.

### C. Plaintiff's delay in seeking a legal remedy weighs heavily against a conclusion that he will suffer irreparable harm absent injunctive relief.

"'[P]reliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights . . . . Delay in seeking enforcement of those rights ... tends to indicate at least a reduced need for such drastic, speedy action.'" *Contour Data Sols. LLC*, 2021 WL 5536266, at *13 (holding that delays in filing a preliminary injunction to enforce alleged contractual rights undermined plaintiff's claim of imminent and irreparable harm) (quoting *Lanin*, 515 F. App'x at 117–18).

Through the final months of 2022, Plaintiff was aware that he was not permitted to train with the team and that the regular competition season was approaching. Plaintiff was aware of a final decision in this matter on December 19, 2022, at which point he had missed one week of the approximately ten-week-long regular, non-championship competition season. Donnelly Affidavit at ¶ 19; *See also* https://www.haverfordathletics.com/sports/mtrack-ind/2022-23/schedule. He then waited nearly six additional weeks to seek the injunctive relief which he asserts is urgently needed while the team's training activities and competition schedule were well under way. By the time Plaintiff filed his Motion for injunctive relief, he had missed nearly seven weeks of the ten-week regular season schedule. Donnelly Affidavit at ¶¶ 19-20. Any resulting urgency in this case was created solely by Plaintiff's decision to delay seeking relief.

While these facts may not rise to the level of a strict Article III mootness and redressability problem, as a practical matter, even if Plaintiff had established a right to relief, the ability of this Court to fashion a remedy that will make a difference has waned to the point of practical insignificance. By his own delay, Plaintiff had already missed a significant majority of the competition season before his motion was filed. While Plaintiff may have jurisdictional standing to assert a claim, as a substantive matter the Court cannot actually redress the harm Plaintiff alleges in any meaningful way. Plaintiff has failed to demonstrate that he will suffer irreparable harm if his requested remedy is not granted. The Court should deny his Motion.

## III.   Plaintiff's requested relief will result in significant harm to Haverford.

The unique nature of private colleges like Haverford and the importance that such institutions enjoy wide latitude in governing their internal affairs has been widely noted by both federal and state courts applying Pennsylvania law. *See Schulman v. Franklin and Marshall Coll.*, 538 A.2d 49, 52 (Pa. Super. 1988) ("A college is a unique institution which, to the degree possible, must be self-governing"); *Swartley v. Hoffner*, 734 A.2d 915, 921 (Pa. Super. Ct. 1999)

(recognizing a general policy of judicial nonintervention in purely academic matters of private colleges); *O'Keefe v. Lehigh Univ.*, No. 19-cv-0884-JMY, 2023 WL 137457, at *13 (E.D.Pa. Jan. 9, 2023) (relying on *Schulman* in holding that this Court would not second guess the decisions of educational professionals at a private university in disciplinary matters).

Plaintiff has failed to demonstrate that he will suffer irreparable harm in the absence of injunctive relieve by the Court. Haverford, however, would greatly suffer from the grant of such relief as it would critically impugn the College's ability to self-govern and in particular it would undermine coaches' ability to do their jobs. This case sets a precedent for any student-athlete who disagrees with a coach's decision to seek judicial review. Plaintiff's complementary demand that he be made *captain* of the team *by a court* is a particular affront. Where does Plaintiff imagine this Court's assistance will end? What if he is not assigned his event of choice? Will he ask the Court to intervene if he demonstrates poor fitness and is benched? This is an untenable result, and there is no limiting principle at play. Haverford, and other similar institutions under this Court's jurisdiction, would be significantly harmed if injunctive relief is granted in this case. The Court should deny Plaintiff's Motion.

## IV.     The public interest weighs in favor of denying injunctive relief.

As discussed above, courts in this circuit and Pennsylvania state courts have recognized a significant public interest in allowing private colleges and universities the discretion to govern their own internal affairs. *See Schulman*, 538 A.2d at 52; *Swartley*, 734 A.2d at 921; *O'Keefe*, 2023 WL 137457 at *13. Courts in other jurisdictions, including in opinions cited by Plaintiff, have made similar holdings. *T.W.*, 2020 WL 5751219 at *9 (holding that enjoining a school district's ability to enforce its own disciplinary rules would harm the public interest); *Univ. of Cincinnati*, 2015 WL 5729328 at *3 ("[G]ranting a temporary restraining order would likely disturb the University's ability to enforce its disciplinary procedures, which would not be in the public

interest."). Plaintiff has not satisfied the heightened burden necessary to grant the extraordinary relief he requests, and the public interest clearly weighs against granting such relief.

## **CONCLUSION**

For the foregoing reasons, and any other reasons that may appear to the Court, Defendants respectfully request that the Court deny Plaintiff's request for injunctive relief.

Respectfully submitted,

**SAUL EWING LLP**

Date: February 2, 2023

s/ *Joshua W. B. Richards*
Joshua W. B. Richards/204315
Levi R. Schy/329199
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA  19102
(215) 972-7737 (Richards)
(215) 972-7803 (Schy)
Joshua.Richards@saul.com
Levi.Schy@saul.com
*Attorneys for Defendant Haverford College*

## <u>CERTIFICATE OF SERVICE</u>

I, Joshua W. B. Richards, certify that on this date I filed via the ECF system a true and correct copy of the foregoing Defendant Haverford College's Brief in Opposition to Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction Pursuant to Fed. R. Civ. P. 65, which constitutes valid service on the following registered users:

| | |
|---|---|
| Patricia M. Hamill, Esquire | Andrew S. Gallinaro, Esquire |
| Conrad O'Brien PC | Conrad O'Brien PC |
| Centre Square West Tower | Centre Square West Tower |
| 1500 Market Street, Suite 3900 | 1500 Market Street, Suite 3900 |
| Philadelphia, PA 19102 | Philadelphia, PA 19102 |
| phamill@conradobrien.com | agallinaro@conradobrien.com |
| | |
| *Attorney for Plaintiff John Doe* | *Attorney for Plaintiff John Doe* |

Date: February 2, 2023

s/ *Joshua W. B. Richards*
Joshua W. B. Richards/204315
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
(215) 972-7737
Joshua.Richards@saul.com

*Attorney for Defendant Haverford College*