## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| JOHN DOE | **:** CIVIL ACTION NO. |
| Plaintiff, | **:** No. 2:23-cv-00299-GAM |
| v. | **:** |
| HAVERFORD COLLEGE, | **:** |
| COACH 1, | **:** |
| CAPTAIN A, and | **:** |
| STUDENT 1 | **:** |
| Defendants. | **:** |

## DEFENDANT HAVERFORD COLLEGE AND COACH 1'S
## <u>MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS</u>

Defendant Haverford College ("Haverford" or "the College") and Coach 1 (together with the College, the "Haverford Defendants"), submit this Memorandum of Law in support of their Motion to Dismiss the claims against them in Plaintiff John Doe's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## <u>TABLE OF CONTENTS</u>

**TABLE OF AUTHORITIES** ...................................................................................... iii

**INTRODUCTION** ..................................................................................................... 1

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY** ............................. 3

  I.  Plaintiff's separation from Haverford College's athletic team and requests for reinstatement. ................................................................................................... 3

  II.  Allegations of gender-based harassment. ......................................................... 8

  III.  Relevant College policies. ............................................................................... 9

  IV.  Procedural history. .......................................................................................... 11

**LEGAL STANDARD** ............................................................................................. 11

**ARGUMENT** .......................................................................................................... 12

  I.  Plaintiff's breach of contract claim must be dismissed because he has not identified any contractual term breached by Haverford. ................................ 12

      A.  The terms of the Sexual Misconduct Policy do not apply to Coach 1's roster management decisions concerning Plaintiff under the circumstances at issue. ......... 13

      B.  The terms of Haverford's Student-Athlete Handbook and roster management policy expressly grant Coach 1 the authority to make decisions concerning his roster, including under the circumstances at issue involving Plaintiff. ................................ 15

  II.  Plaintiff fails to allege facts sufficient to support his Title IX deliberate indifference claim because he fails to allege discrimination on the basis of sex, that he was subject to actionable harassment, or that Haverford's response to notice of alleged harassment was clearly unreasonable. ................................................................................... 17

      A.  Plaintiff fails to allege that Haverford's response to any alleged harassment he experienced amounted to discrimination on the basis of sex. ..................................... 17

      B.  Plaintiff fails to allege that he was subject to actionable harassment. ........................ 19

      C.  Plaintiff fails to allege that Haverford's response to alleged harassment was clearly unreasonable under the circumstances. ...................................................................... 19

  III.  Plaintiff fails to state a claim for false light against Haverford and Coach 1 because he fails to allege publicity, and the alleged statements are insufficient to support a claim for false light. ................................................................................................................ 21

A. Plaintiff fails to allege facts sufficient to establish publicity element as to Haverford and Coach 1 .................................................................................................................... 21

B. Plaintiff's removal from the roster cannot support his false light claim..................... 23

C. Any alleged statements attributable to Coach 1 also fail to sustain a claim for false light because such statements are non-actionable opinion. ......................................... 24

D. Coach 1's alleged statements to his team regarding allegations that Plaintiff committed sexual assault are not defamatory because they are privileged. ............... 25

IV. Plaintiff fails to state a defamation claim against Coach 1 .................................................. 26

A. Coach 1's alleged statements are non-actionable opinion and are privileged. ........... 27

B. Coach 1's alleged statements to his team regarding allegations that Plaintiff committed sexual assault are not defamatory because the team members were already aware of the allegations. ........................................................................................... 27

V. Plaintiff's intentional infliction of emotional distress claim fails as to Haverford and Coach 1 because Plaintiff fails to allege extreme and outrageous conduct by those parties. 29

VI. Plaintiff's request for injunctive relief should be stricken because Plaintiff fails to allege facts warranting such relief............................................................................................... 30

**CONCLUSION** ............................................................................................................ **31**

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...................................................................................11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...................................................................................11

*Bhatti v. Republican Caucus of Pa. House of Representatives*,
  No. 18-CV-2178, 2020 WL 3412661 (M.D. Pa. June 22, 2020)..........................23

*Buschel v. MetroCorp.*,
  957 F. Supp. 595 (E.D. Pa. 1996) ...............................................................25

*Byars v. Sch. Dist. of Phila.*,
  942 F. Supp. 2d 552 (E.D. Pa. 2013) ...................................................21, 22, 23

*Cooper v. Samsung Elecs. Am., Inc.*,
  374 F. App'x 250 (3d Cir. 2010) ....................................................................4

*David v. Neumann Univ.*,
  187 F. Supp. 3d 554 (E.D. Pa. 2016) ............................................................13

*Davis v. Monroe Cty. Bd. of Educ.*,
  526 U.S. 629 (1999)..........................................................................17, 19, 20

*Dawn L. v. Greater Johnstown Sch. Dist.*,
  586 F. Supp. 2d 332 (W.D. Pa. 2008).............................................................20

*Dempsey v. Bucknell Univ.*,
  No. 4:11-CV-1679, 2012 WL 1569826 (M.D. Pa. May 3, 2012)..........................18

*Dixon v. Boscov's, Inc.*,
  No. CIV.A. 02-1222, 2002 WL 1740583 (E.D. Pa. July 17, 2002).......................30

*Doe v. Columbia Coll. Chi.*,
  933 F.3d 849 (7th Cir. 2019) .......................................................................18

*Doe v. Princeton Univ.*,
  790 F. App'x 379 (3d Cir. 2019) ...........................................................17, 18, 19

*Doe v. Salisbury Univ.*,
  123 F. Supp. 3d 748 (D. Md. 2015)...............................................................26

*Doe v. The Trustees of the Univ. of Pa.*,
   270 F. Supp. 3d 799 (E.D. Pa. 2017) ............................................................13, 29

*Doe v. Univ. of Scis.*,
   961 F.3d 203 (3d Cir. 2020)..........................................................................17

*Fanelle v. LoJack Corp.*,
   79 F. Supp. 2d 558 (E.D. Pa. 2000) ..............................................................21

*Frazer v. Temple Univ.*,
   25 F. Supp. 3d 598 (E.D. Pa. 2014) .........................................................18, 19

*Gebser v. Lago Vista Indep. Sch. Dist.*,
   524 U.S. 274 (1998)........................................................................................20

*Geesey v. Stryker Corp.*,
   No. 09-2988, 2010 WL 3069630 (E.D. Pa. Aug. 4, 2010) ......................................12

*Graboff v. Colleran Firm*,
   744 F.3d 128 (3d Cir. 2014)...........................................................................27

*Harris v. Saint Joseph's Univ.*,
   No. CIV.A. 13-3937, 2014 WL 1910242 (E.D. Pa. May 13, 2014) ..............................27, 30

*Haynes v. Alfred A. Knopf, Inc.*,
   8 F.3d 1222 (7th Cir. 1993) ...........................................................................24

*Hill v. Cosby*,
   665 F. App'x 169 (3d Cir. 2016) .....................................................................24

*Kimberg v. Univ. of Scranton*,
   No. 06-cv-1209, 2007 WL 405971 (M.D. Pa. Feb. 2, 2007).................................................12

*Kost v. Kozakiewicz*,
   1 F.3d 176 (3d Cir. 1993) ...............................................................................11

*Miller v. Thomas Jefferson Univ. Hosp.*,
   908 F. Supp. 2d 639 (E.D. Pa. 2012) ..............................................................13

*Pace v. Baker-White*,
   432 F. Supp. 3d 495 (E.D. Pa. 2020), *aff'd*, 850 F. App'x 827 (3d Cir. 2021) ...........24, 25, 27

*Phat Van Le v. Univ. of Med. & Dentistry of N.J.*,
   379 F. App'x 171 (3d Cir. 2010) .....................................................................16

*Pryor v. Nat'l Collegiate Athletic Ass'n*,
   288 F.3d 548 (3d Cir. 2002)............................................................................4

*Santiago v. Warminster Twp.*,
   629 F.3d 121 (3d Cir. 2010)...........................................................................12

*Saravanan v. Drexel Univ.*,
   No. CV 17-3409, 2017 WL 4532243 (E.D. Pa. Oct. 10, 2017).............................17

*Smith v. Pennsylvania*,
   No. CV 21-5473-KSM, 2022 WL 3139854 (E.D. Pa. Aug. 4, 2022).....................27

*Toys "R" Us-Penn Inc. v. Discovery Zone, Inc.*,
   No. CIV. A. 95-2534, 1996 WL 47980 (E.D. Pa. Feb. 6, 1996) ..........................30

*Udodi v. Stern*,
   438 F. Supp. 3d 293 (E.D. Pa. 2020) ..............................................................26

*Vurimindi v. Fuqua Sch. of Bus.*,
   435 Fed.Appx. 129 (3d Cir. 2011) ..................................................................13

*Winter v. Pennsylvania State Univ.*,
   172 F. Supp. 3d 756, 776 (M.D. Pa. 2016) ......................................................17


### STATE CASES

*Beckman v. Dunn*,
   419 A.2d 583 (Pa. Super. Ct. 1980)................................................................25

*Cimina v. Bronich*,
   537 A.2d 1355 (Pa. 1988)..............................................................................30

*Feldman v. Lafayette Green Condo. Ass'n*,
   806 A.2d 497 (Pa. Commw. Ct. 2002) ............................................................28

*Foster v. UPMC S. Side Hosp.*,
   2 A.3d 655 (Pa. Super. Ct. 2010)...................................................................26

*Harris by Harris v. Easton Publ'g Co.*,
   483 A.2d 1377 (Pa. Super. Ct. 1984)..............................................................22

*Hart v. Arnold*,
   884 A.2d 316 (Pa. Super. Ct. 2005)................................................................12

*Hoy v. Angelone*,
   720 A.2d 745 (Pa. 1998).........................................................................29, 30

*Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co.*,
   905 A.2d 462 (Pa. 2006) ....................................................................................26

*Maier v. Maretti*,
   671 A.2d 701 (Pa. Super. Ct. 1995) ....................................................................25

*McShea v. City of Phila.*,
   995 A.2d 334 (Pa. 2010) ....................................................................................12

*Murphy v. Duquesne Univ. Of The Holy Ghost*,
   777 A.2d 418 (Pa. 2001) ....................................................................................13

*Rankin v. Phillippe*,
   211 A.2d 56 (Pa. Super. Ct. 1965) ................................................................25, 27

*Reardon v. Allegheny Coll.*,
   926 A.2d 477 (Pa. Super. Ct. 2007) ....................................................................24

*Swartley v. Hoffner*,
   734 A.2d 915 (Pa. Super. Ct. 1999) ....................................................................12

## INTRODUCTION

Plaintiff John Doe commenced this civil action attacking the discretion of a Division III College coach to exercise control over his team's roster. After this Court held that Coach 1 was permitted by law and policy to control the composition of his roster, Plaintiff shifted his focus. Plaintiff's failure to obtain preliminary injunctive relief appears to have caused him to resort to taking legal action against his coach and classmates, including by serving process on his classmate in the midst of athletic practice in the presence of his teammates. The College finds this course of action deeply regrettable.

In this lawsuit, Plaintiff seeks damages for Coach 1's decision that it would be best for his team if Plaintiff did not continue to participate based on a complete breakdown in Plaintiff's relationships with his teammates. Notwithstanding this Court's conclusion that athletic coaches have discretion to make such decisions, Plaintiff has pressed forward with an Amended Complaint containing six causes of action (five of which are asserted against Haverford or its officials) supported by tenuous legal theories and conclusory, and at times conflicting, allegations.

Plaintiff's claims against the Haverford Defendants fail for several reasons. *First*, Plaintiff's breach of contract claim against Haverford fails as a matter of law for the reasons this Court has already explained: Plaintiff has failed to allege any specific or applicable contractual terms breached by Haverford and the Sexual Misconduct Policy does not apply to these circumstances because Plaintiff was not subject to a formal complaint, was not investigated, and was not sanctioned under that policy. (*See* Memorandum, ECF No. 21). Although the law of the case doctrine may not formally apply under the circumstances presented here, the Court is nevertheless being presented with the same facts and being asked by Plaintiff to make a different decision.

*Second*, Plaintiff's Title IX deliberate indifference claim fails from the start because he fails to allege any facts by which one could plausibly infer that he was discriminated against because of his sex, or, in other words, that a female student in his shoes would have been treated differently. Plaintiff also fails to allege the basic elements of a deliberate indifference claim, including actionable harassment or that Haverford's response to notice of actionable harassment was clearly unreasonable under the circumstances.

*Third*, Plaintiff's various defamation and false light claims fail because he has failed to allege publicity, and the alleged statements he relies on fail to buttress that claim. Plaintiff's defamation claim against Coach 1 also fails for many of the same reasons, and because Coach 1's alleged statements are either non-actionable opinion or otherwise not capable of defamatory meaning.

And *finally*, Plaintiff's intentional infliction of emotional distress claim fails because the alleged conduct does not meet the standard of extreme and outrageous conduct, as numerous, very similar precedents from this District and elsewhere bear out.

The College takes no position in determining who is right or wrong with regard to social differences among members of its student body, but does its best to support each student through their academic career at Haverford.  To that end, Haverford has, and continues to, support Plaintiff as a member of its community, including expending resources to facilitate discussions between Plaintiff and members of the community with whom he has faced discord. That Haverford's efforts have not restored Doe's social standing with his peers, however, is not cause to hold the College liable for damages, and Plaintiff's suit threatens to set a dangerous precedent in that regard. For the reasons set forth in more detail below, Plaintiff's claims against the Haverford Defendants should be dismissed with prejudice.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

I.   **Plaintiff's separation from Haverford College's athletic team and requests for reinstatement.**

Plaintiff is a current student at Haverford who competed as a walk-on member of a varsity athletic team during his first two years at the College. (Am. Compl. (ECF No. 1) ¶¶ 15-16, 24, 29-30).[1] Sometime before February 3, 2022, allegations emerged on campus that Plaintiff had engaged in sexual assault, and the allegations reached Plaintiff's teammates. (*Id.* at ¶¶ 42, 45). On February 3, 2022, the co-captains of the team confronted Plaintiff regarding concerns they had about him, including reports suggesting that Plaintiff may have engaged in sexual misconduct involving another student. (*Id.* at ¶¶ 47). The next day, the team co-captains communicated to Plaintiff via email that they did not think it was in the best interest of the team for Plaintiff to remain on the team. (*Id.* at ¶ 48). Following this exchange[2] and a subsequent conversation between Plaintiff and

---

[1] While Plaintiff describes his tenure on the team as being harmonious and without issue (Am. Compl. ¶ 31), his factual allegations present a more mixed narrative. Plaintiff alleges that an event characterized as "The Haverford Strike" resulted in "an atmosphere of intolerance and retaliation" at Haverford and within its athletic teams only one year after Plaintiff's arrival on campus. (*Id.* at ¶ 36). In fact, Plaintiff credits his unsupportive views of the strike with impacting and ending friendships with certain classmates. (*Id.* at ¶¶ 38, 40). Plaintiff specifically references that some of his teammates were supportive and heavily involved in the strike. (*Id.* at ¶¶ 39). Plaintiff alleges, without factual support, that this atmosphere of intolerance contributed to the dissolution of his relationship with his team. (*Id.* at ¶ 41). While these allegations appear to have little to do with the merits of Plaintiff's claims, they undermine Plaintiff's conclusory description of his experience on the team as harmonious until the emergence of allegations in 2022 that he had sexually assaulted a classmate, which Plaintiff later asserts to be "solely" responsible for his disagreements with his teammates. (*See, e.g.*, *Id.* at ¶ 11).

[2] Confrontation of this sort is a deeply-embedded feature of Haverford's culture and educational environment. For well over a century, the Haverford College Honor Code has defined how students at the College are to engage with each other in terms of peaceful confrontation concerning all aspects of life at Haverford. *See* https://honorcouncil.haverford.edu/the-code/what-is-the-code/. According to the Honor Code, "[u]pon encountering actions, values, or words" that a student finds to be inconsistent with the Honor Code, students are encouraged to "initiate dialogue with the goal of repairing the damage that these actions, values, or words may have caused while also encouraging the restoration of our community values." *See* https://honorcouncil.haverford.edu/the-code/. In response, a confronted student is expected to "actively listen[] to acknowledge and understand the harm experienced by the confronting party in order to facilitate the restorative process." *Id.* It was in the spirit of the Honor Code that the team's co-captains raised their concerns about Plaintiff to Plaintiff and their coach.

Coach 1, Plaintiff agreed to step away from participation on the team. (*Id.* at ¶¶ 50-52). Plaintiff informed his teammates via email of his decision to resign from the team. (*See* Ex. A,[3] Plaintiff's Feb. 4, 2022 Email). In that email, Plaintiff wrote "I believe that this is in the best interest of the program for me to no longer be a member of the team." (*Id.*) Despite indicating that he hoped "to be able to contribute at a later date," Plaintiff wrote that he was "resigning from my leadership position and membership on the team until further notice." (*Id.*)

The captains then allegedly held an "athletes-only team meeting" (without Coach 1) where they discussed Plaintiff's resignation. (Am. Compl. ¶¶ 52-53). Despite not being at that meeting, Plaintiff alleges that his teammates discussed the allegations against him at that time. (*Id.* at ¶ 53). Coach 1 informed Plaintiff that he intended to report the allegations of sexual misconduct to the Title IX Office, consistent with the coach's duties as a mandatory reporter under Haverford's Sexual Misconduct Policy. (*Id.* at ¶ 50). On February 16, 2022, Plaintiff met with Haverford's Title IX Coordinator who confirmed that Coach 1 had informed her of the allegation that Plaintiff had committed sexual assault. (*Id.* at ¶¶ 55-56). The Title IX Coordinator also informed Plaintiff that there was no formal complaint against him at that time. (*Id.*)

Later in the Spring 2022 season, Plaintiff met with Coach 1 and requested to rejoin the team. (*Id.* at ¶ 58). Coach 1 informed Plaintiff that his former teammates remained uncomfortable with his presence on the team, but suggested that Plaintiff, Coach 1, and the team captains meet to discuss the matter. (*Id.* at ¶ 59). Plaintiff alleges that Coach 1 advised him that he had discussed Plaintiff's request to rejoin the team and the sexual assault allegations against Plaintiff with the

---

[3] The Court may consider documents attached to a Rule 12(b)(6) motion to dismiss as part of the pleadings if they are referenced in the plaintiff's complaint and are central to the claim. *Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x 250, 253 n.3 (3d Cir. 2010) (citing *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002)).

team captains (who had already confronted Plaintiff regarding the allegations and, in fact, were the individuals who initially informed Coach 1 of the allegations), and that Plaintiff's former teammates remained opposed to his return. (*Id.* at ⁋ 63). In light of this discussion, Coach I facilitated a meeting on March 22, 2022 between Plaintiff, Coach 1, the co-captains, and several Haverford officials including the Title IX Coordinator, the Director of Athletics, and the Senior Associate Dean of the College. (*Id.* at ⁋⁋ 64, 69). At the meeting, the Title IX Coordinator confirmed to all in attendance that the Title IX office had not received a formal complaint concerning Plaintiff, nor was there an ongoing Title IX investigation.[4] (*Id.* at ⁋ 70).

In response, the co-captains maintained that they were still opposed to Plaintiff's participation on the team, citing their concerns regarding Plaintiff's behavior that were independent of any concerns relating to the alleged instance of sexual assault, including the captains' assessment that Plaintiff was a misogynist and their personal observations of Plaintiff's offensive behavior toward women. (*Id.* at ⁋ 74). Coach 1 upheld his decision that Plaintiff's participation on the team would not be in the best interest of Plaintiff, his teammates individually, or the team as a whole, and denied Plaintiff's request to rejoin the team. (*Id.* at ⁋ 76). Plaintiff concedes in his Amended Complaint that Coach 1 had "full authority" to make decisions regarding the team roster at that time. (*Id.* at ⁋ 60). After the March 22 meeting, the Associate Dean of the

---

[4] In paragraph 6 of his Amended Complaint, Plaintiff alleges that the Title IX Office contacted the purported victim of sexual assault and that the purported victim "confirmed that the rumor had no basis." (*See also* Am. Compl. ⁋⁋ 98, 204 (alleging that Haverford has actual knowledge that the purported victim denied the rumor and is aware that the allegations of sexual assault are false)). This appears to be a summary of the allegation in paragraph 97: not that Plaintiff has knowledge of such facts, but that "**upon information and belief**" the purported victim advised Haverford that she had no basis to file a formal complaint against Plaintiff because she never had sexual contact with him. (*Id.* at ⁋ 97 (emphasis added)). Plaintiff does not, and could not within the bounds of Rule 11, squarely plead that such a communication took place, and pleading "on information and belief" is insufficient, in this context, to raise Plaintiff's claim beyond the speculative level. The alleged confirmation by the Title IX Coordinator that no formal complaint had been filed against Plaintiff (*see id* ⁋ 96) does not establish that Plaintiff never committed sexual assault and certainly does not establish that the College had alleged knowledge of the allegation's purported falsity.

College checked on Plaintiff and also encouraged Plaintiff's Advising Dean to offer similar support. (*Id.* at ¶ 78).

Throughout the remainder of the Spring 2022 semester, Plaintiff and his parents continued to meet and correspond with College officials to discuss Plaintiff's separation from the team. (*Id.* at ¶ 89). Plaintiff alleges that during one such conversation on April 15, 2022, Plaintiff's Advising Dean and the Dean of the College informed Plaintiff's mother that they had spoken with one of the team captains, "Captain A," (whom Plaintiff alleges to be responsible for disseminating information about the allegations of sexual misconduct) and told Captain A that it was inappropriate for him to be involved in the matter and discouraged him from "spreading rumors." (*Id.* at ¶¶ 94-95). Plaintiff alleges he had a similar conversation with the Title IX Coordinator on May 4, 2022, who then informed Plaintiff that she had spoken with two students who were allegedly involved in initially raising the sexual assault concerns, and that the Title IX Coordinator told those individuals "that her office was available to assist someone in making a Title IX complaint, not to entertain rumors, and that no complaint existed against [Plaintiff]." (*Id.* at ¶ 99).

Plaintiff alleges that on May 5, 2022, he met with the Dean of the College and Director of Athletics to request reinstatement to the team. (*Id.* at ¶ 100). The Dean supported Coach 1's decision not to reinstate Plaintiff because the situation between Plaintiff, members of the team, and the coach had become too contentious. (*Id.* at ¶ 101). Both the Dean and the Director of Athletics explained the College's position and policy that Plaintiff's (and all students') "ability to participate in athletics was a privilege, not a right," and that the coach's decisions concerning his team's roster would not be overturned. (*Id.*)

During the Fall 2022 semester, Plaintiff's parents and lawyer contacted the College to request that Plaintiff be permitted to rejoin the team. (*Id.* at ¶ 110). In response, the College

outlined the steps that would need to be taken for this request to be considered, including meeting with the coach and co-captains of the team to explore whether the circumstances had changed since the previous spring and whether Plaintiff could positively contribute to a positive team environment. (*Id.* at ¶ 115).[5] The College also emphasized the position of Plaintiff's former teammates: they were uncomfortable with Plaintiff's presence on the team based on their own personal observations of his behavior, including offensive behaviors towards women. (*Id.* at ¶ 116). Plaintiff agreed to participate in the meetings "in an attempt to be cooperative and to rebuild his relationship with his teammates and to rejoin the team." (*Id.* at ¶ 121). Thus, Plaintiff acknowledges that his relationship with his former teammates was fractured at that time. (*Id.*)

On October 24, 2022, the College facilitated a conversation between Plaintiff and Coach 1 with a trained facilitator present, as well as a support person for both Plaintiff and Coach 1. (*Id.* at ¶ 122). In that meeting, Coach 1 explained again that Plaintiff's former teammates had voiced concerns regarding his return to the team—such concerns were independent of those related to the alleged sexual assault and caused the teammates to be averse to Plaintiff's reinstatement. (*Id.* at ¶ 124). Coach 1 advised Plaintiff that Plaintiff would need to address those concerns directly with his former teammates himself for a reinstatement to be plausible. (*Id.* at 125).

The College then facilitated a discussion (again, with a trained facilitator and support person present) on December 2, 2022 between Plaintiff and the team captains. (*Id.* at ¶ 139). The co-captains voiced the longstanding concerns that they and other members of the team had, including Plaintiff's treatment of women, and expressed the team's discomfort with Plaintiff's

---

[5] Plaintiff alleges in his Complaint that his "proposal" for reinstatement and reintegration to the team was rejected by the College. (Am. Compl. ¶ 115). That "proposal" involved unilaterally inserting Plaintiff onto the team roster despite the objections of his would-be teammates and coach, and required the assignment of a "senior administrator" to "support and protect" Plaintiff by ensuring that he was "welcomed back" to the team, as a co-captain. (*Id.* at ¶ 114).

proposed reinstatement. (*Id.* at ⁋ 141). On December 19, 2022 Plaintiff met with the Director of Athletics and the Assistant Director of Athletics to discuss his request to rejoin the team. (*Id.* at ⁋ 145). The Director of Athletics told Plaintiff that Coach 1 had decided that "it was not in the best interest of the team" for Plaintiff to rejoin. (*Id.*) The Director of Athletics further clarified that Coach 1's decision was based on feedback following the October 24 and December 2 meetings. (*Id.* at ⁋ 146). The Director of Athletics communicated to Plaintiff the College's policy that athletic coaches have "full discretion and autonomy" with respect to roster decisions. (*Id.* at ⁋⁋ 146-47). On January 6, 2023, Plaintiff's parents met with the Dean of the College, who restated the College's policy that athletic coaches have full discretion to manage their team's roster and cited "team disruption" as a legitimate reason for the coach to utilize that discretion in preventing Plaintiff from joining the team. (*Id.* at ⁋⁋ 149-50).

## II.    Allegations of gender-based harassment.

Plaintiff alleges generally that he was a target of "gender-based harassment" during his time at the College. (*Id.* at ⁋ 44). Specifically, Plaintiff alleges that on March 27, 2022, a fellow Haverford student identified him via a social media post as someone who had committed sexual assault and called on other Haverford students to harass and intimidate him. (*Id.* at ⁋ 88). Plaintiff alleges that he reported the post to his Advising Dean and requested that a disciplinary panel be convened to investigate the alleged harassment. (*Id.* at ⁋⁋ 88, 90). He does not allege that he filed a formal complaint[6] against the student whom he alleges posted on social media about him, and he does not allege that further social media posts occurred after he reported the initial posts to the College. Plaintiff's conclusory allegations that Haverford "provided no tangible support" or failed

---

[6]  As Plaintiff has alleged at length in his original Complaint and Amended Complaint, (*see* Am. Compl. ⁋⁋ 157-60), allegations of harassment based on sex are addressed by the College in accordance with the Sexual Misconduct Policy, which requires the filing of Formal Complaint under that policy. (Am. Compl. Ex. A at 2, 7).

to respond to his report (*id.* at ¶ 93) are belied by his own factual allegations to the contrary. In response to Plaintiff's report of the social media posts, his Advising Dean offered support to Plaintiff and College officials intervened by speaking with Captain A and instructing him "that it was not appropriate for him to be involved in this issue—spreading rumors and getting [Plaintiff] kicked off the team." (*Id.* at ¶¶ 93, 95). The Title IX Coordinator also contacted individuals who were identified as having been involved in communicating the allegations of sexual assault, and informed them that "her office was available to assist someone in making a Title IX complaint, not to entertain rumors, and that no complaint existed against [Plaintiff]." (*Id.* at ¶ 99).

Plaintiff alleges that during the Fall 2022 semester, he was "intentionally body-checked" by a student whom he did not know. (*Id.* at ¶ 104). Plaintiff alleges no facts suggesting that this incident was related to the allegations of sexual misconduct against him. He further alleges several instances in which individuals on campus declined to interact with him socially. (*Id.* at ¶¶ 105-107).

## III.     Relevant College policies.

Haverford's Roster Management Policy as set forth in its Student-Athlete Handbook directly addresses this situation and controls Plaintiff's contractual relationship with Haverford here:

> Being a varsity athlete at Haverford College is a privilege and not a right. **Varsity coaches have broad discretion in determining the individuals who make up his or her team's active roster. This discretion includes, but is not limited to, removal from the roster at any time.** Should you feel that you were removed from the team unjustly, you can submit an appeal to the director of athletics.

(Ex. B, Haverford College Student-Athlete Handbook, at 3 (emphasis added)).

Plaintiff concedes that Haverford's policy, as communicated to him by the Director of Athletics on December 19, 2022, is that athletic coaches have "full discretion and autonomy" in

making roster decisions (Am. Compl. ¶ 146) and, as communicated to Plaintiff by the Dean of the College on May 5, 2022, Plaintiff's "ability to participate in athletics was a privilege, not a right." (*Id.* ¶¶ at 100-01). This policy was also communicated to Plaintiff's parents by the Dean of the College on January 6, 2023, who also cited "team disruption" as a legitimate reason for a coach to exercise their discretion under the policy. (*Id.* ¶ at 150). Plaintiff concedes elsewhere in his Complaint that he understood this to be the policy, including that "Coach 1 had full authority" to make roster decisions upon Plaintiff's initial reinstatement request in March 2022. (*Id.* at ¶ 60).[7]

While Plaintiff points out that the Sexual Misconduct Policy includes certain sanctions that *may* be applied "[w]hen a Respondent accepts or is found responsible for violating [the] Sexual Misconduct Policy," (Am. Compl. Ex. A at 24) it does not follow that those listed actions are *only* to be applied in the context of sanctions for sexual misconduct cases, or that similar actions cannot be applied in the context of other aspects of student life at the College. (*See* Memorandum, ECF No. 21 at 8-10 (rejecting Plaintiff's assertion that he was sanctioned under the Sexual Misconduct Policy)). In fact, the explicit language of the Sexual Misconduct Policy makes clear that the resolution procedures under that policy do not apply here, where Plaintiff was not and is not the subject of a formal complaint or any investigation or adjudication. (*See* Am. Compl. Ex A at 7 (defining a "Formal Complaint" as a document which triggers "initiation of the College's Resolution procedures consistent with this Sexual Misconduct Policy"); *id.* at 12 ("The timeframe for the College's Resolution Process begins with the filing of a Formal Complaint.")).

---

[7] Although not within the four corners of the Amended Complaint, it is notable that Plaintiff also conceded on the record that he always understood Coach 1 to have the "final say" on team decisions. (*See* TRO Hearing Transcript, ECF No. 23 at 37:10-16).

## IV.     Procedural history.

On January 25, 2023, Plaintiff filed suit against Haverford asserting claims for (1) breach of contract; (2) violation of Title IX; (3) false light/defamation; and (4) intentional infliction of emotional distress. (ECF No. 1). The same day, Plaintiff moved for a temporary restraining order and preliminary injunction pursuant to Federal Rule of Civil Procedure 65 as to his breach of contract claim. (ECF No. 4). Haverford responded in opposition to injunctive relief on February 2, 2023 (ECF No. 13), and the Court heard oral arguments on Plaintiff's Motion on February 3, 2023.[8] (*See* ECF No. 23). On February 14, 2023, the Court entered an Order denying Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction, holding that: (1) Plaintiff had not satisfied his burden of showing that he was likely to succeed on the merits of his breach of contract claim; (2) Plaintiff could not show irreparable harm based on his exclusion from the team; and (3) the balance of harms weighed against ordering Haverford to reinstate Plaintiff to the team. (ECF Nos. 21 and 22). On March 21, 2023, Plaintiff filed his First Amended Complaint. (ECF No. 26), adding claims against Coach 1 and two College classmates.

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint that on its face is insufficient to state a claim upon which relief can be granted. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). To survive a motion to dismiss under Rule 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported

---

[8] Following the hearing on Plaintiff's motion for injunctive relief, both parties submitted additional briefing in support of their respective positions. (*See* ECF Nos. 15, 18, 20).

by mere conclusory statements do not suffice" in defeating a motion to dismiss. *Geesey v. Stryker Corp.*, No. 09-2988, 2010 WL 3069630, at *2 (E.D. Pa. Aug. 4, 2010) (quoting *Iqbal*, 556 U.S. at 678 (2009)).

The Third Circuit has set forth a three-part analysis that the court must conduct in evaluating a Rule 12(b)(6) motion to dismiss. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (citations omitted). "Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* "Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" *Id.*

## **ARGUMENT**

### I.    **Plaintiff's breach of contract claim must be dismissed because he has not identified any contractual term breached by Haverford.**

To state a claim for breach of contract, a plaintiff must plead that "there was a contract, the defendant breached it, and plaintiffs suffered damages from the breach." *McShea v. City of Phila.*, 995 A.2d 334, 340 (Pa. 2010) (citing *Hart v. Arnold*, 884 A.2d 316, 332 (Pa. Super. Ct. 2005)). Under Pennsylvania law, relationships between private colleges and their enrolled students are contractual in nature. *Kimberg v. Univ. of Scranton*, No. 06-cv-1209, 2007 WL 405971, at *3 (M.D. Pa. Feb. 2, 2007) (citing *Swartley v. Hoffner*, 734 A.2d 915, 919 (Pa. Super. Ct. 1999)). The terms of such contracts are comprised of the "written guidelines, policies, and procedures as contained in the written materials distributed to the student over the course of their enrollment in the institution." *Id.*

To survive a motion to dismiss on his breach of contract claim, Plaintiff must specifically identify the contractual terms at issue. "While Pennsylvania law allows a student to sue a private

university for breach of contract, 'the allegations must relate to a **specific** and identifiable promise that the school failed to honor.'" *David v. Neumann Univ.*, 187 F. Supp. 3d 554, 558 (E.D. Pa. 2016) (quoting *Vurimindi v. Fuqua Sch. of Bus.*, 435 Fed.Appx. 129, 133 (3d Cir. 2011)) (emphasis added). Further, it is Plaintiff's burden to "point to **specific** undertakings in the [contract] that were not provided." *David v. Neumann Univ.*, 187 F. Supp. 3d 554, 558 (E.D. Pa. 2016) (quoting *Miller v. Thomas Jefferson Univ. Hosp.*, 908 F. Supp. 2d 639, 655 (E.D. Pa. 2012)) (emphasis added).

In interpreting the provisions and intent of a contract between a private college or university and its enrolled students, a court must also consider specific contractual terms in the larger context of a school's policies and procedures as a whole. *See Doe v. The Trustees of the Univ. of Pa.*, 270 F. Supp. 3d 799, 812 (E.D. Pa. 2017) (declining to consider specific terms of a university's disciplinary procedures in isolation); *Murphy v. Duquesne Univ. Of The Holy Ghost*, 777 A.2d 418, 432 (Pa. 2001) ("Simply put, the parties' contractual intent cannot be gleaned by ignoring all but one sentence in the Contract, and then reading that sentence out of context.").

It is accordingly Plaintiff's burden on a motion to dismiss to show that Haverford violated a specific written promise made by the College.  Plaintiff has not done that. In particular, Plaintiff has identified no written promise by Haverford that limits a coach's discretion to control his roster under the situation presented here. This is the end of the analysis.

A. **The terms of the Sexual Misconduct Policy do not apply to Coach 1's roster management decisions concerning Plaintiff under the circumstances at issue.**

Lacking any such hook, Plaintiff's theory relies entirely on an inapplicable provision within the Sexual Misconduct Policy that includes "[r]emoval from organization, team and/or committee" and "[r]evocation of leadership or supervisory position" as *potential* sanctions *for individuals who are adjudicated to have violated the Sexual Misconduct Policy*. (Am. Compl. Ex A at 24). This Court of course rejected that theory in its Memorandum and Order denying Plaintiff's request for

injunctive relief as to his breach of contract claim. (Memorandum, ECF No. 21 at 8-10). This Court also rejected Plaintiff's assumption "that whenever a sanction listed under the [Sexual Misconduct Policy] is imposed it can only be imposed for a violation of the [Sexual Misconduct Policy]" but instead recognized that "many of the actions listed as potential sanctions may occur in other circumstances beyond a violation of the [Sexual Misconduct Policy]." (*Id.* at 8 n.6).

As discussed above, Plaintiff alleges that he is not, and has never been, the subject of a formal complaint or investigation as defined under the College's Sexual Misconduct Policy. (*See* Am. Compl. ¶ 58). Per the terms of the Sexual Misconduct Policy, a formal complaint is a prerequisite to the College's resolution process (including potential sanctions) under that policy. Further, the text of the policy contemplates instances, like here, where students may be subject to actions that are listed as possible "sanctions" under the Sexual Misconduct Policy under circumstances entirely separate from the Title IX Office. (*See* Am. Compl. Ex A at 24 ("Possible sanctions described in this Policy are not exclusive of, and may be in addition to, other action taken, or sanctions imposed by external authorities.")).

As a result, Plaintiff's allegation that he was somehow sanctioned under the Sexual Misconduct Policy despite never being subject to a formal complaint or investigation under that policy fails to meet the plausibility requirement necessary to survive a motion to dismiss. Given the nature of the potential sanctions listed in the Sexual Misconduct Policy, it is not plausible to assume that, as Plaintiff suggests, similar actions can only be taken in the context of a full adjudication under the Sexual Misconduct Policy. Under Plaintiff's proposed interpretation of Haverford's policies, once a student has been the subject of allegations of sexual misconduct at any time, that individual could not be voted out of a leadership position, assigned community service or attendance at a program for academic or extracurricular purposes, issued a written or

oral warning of any nature, or be beholden to routine diploma or transcript requirements, absent a full adjudication and finding of responsibility under the Sexual Misconduct Policy. This interpretation is implausible and unworkable, in addition to being unsupported by the Policy's language.

**B.      The terms of Haverford's Student-Athlete Handbook and roster management policy expressly grant Coach 1 the authority to make decisions concerning his roster, including under the circumstances at issue involving Plaintiff.**

According to Plaintiff's allegations, he initially stepped away from the team because, by his teammates' assessment, his continued involvement was not in the best interest of the team. (*See* Ex. A, Feb. 4, 2022 Email). His subsequent requests for reinstatement were denied because the coach determined that, based on the team members' experiences with Plaintiff and a series of rigorous discussions facilitated by the College and supported by the Title IX Office, it was evident that Plaintiff could not positively contribute to a positive team environment and his reinstatement would lead to further team disruption.

Although not necessary to reach the conclusion that Plaintiff has identified no concrete promise breached by Haverford, the only *specific* promise related to Plaintiff's allegations explicitly undermines his argument. The College's Roster Management policy grants varsity coaches broad discretion in determining the individuals who make up his or her team's active roster.

> Being a varsity athlete at Haverford College is a privilege and not a right. Varsity coaches have broad discretion in determining the individuals who make up his or her team's active roster. This discretion includes, but is not limited to, removal from the roster at any time. Should you feel that you were removed from the team unjustly, you can submit an appeal to the director of athletics.

(Ex. B, Student-Athlete Handbook at 3). That policy, as alleged in the Complaint, was communicated to Plaintiff several times and is the beginning and the end of the analysis here.

15

Plaintiff devotes significant discussion in his Amended Complaint to the fact that the Student-Athlete Handbook was updated to emphasize the College's Roster Management policy and the timing of that policy update. That argument misses the point, though.  It is not the College's burden to show that it had a written policy in place permitting Coach 1 to take action; it is Plaintiff's obligation to show that the College *breached* a written promise, and the absence of a written Roster Management policy at any point during Plaintiff's ordeal does not create the basis for a contractual obligation.

In any case, however, the Roster Management policy represents "a restatement of a generally understood principle of team sports." (Memorandum, ECF No. 21 at 9 n.7), and applied when Coach 1 made the final decision to deny Plaintiff's requests to rejoin the team.

In sum, Plaintiff was not sanctioned at all by the College or Coach 1, let alone for alleged sexual misconduct. Plaintiff's failure to plausibly allege any contractual terms breached by Haverford is fatal to his claim, and this Court should dismiss it with prejudice.[9]

---

[9] The facts alleged in the Amended Complaint and attached Exhibits demonstrate on their own that Plaintiff has failed to state a claim for breach of contract. To facilitate an efficient resolution of this action, however, the College references affidavits from Haverford officials (*see* ECF Nos. 13-2 and 13-3) and the Feb. 3, 2023 TRO Hearing Transcript (*see* ECF No. 23) containing testimony from Haverford's Title IX Coordinator *confirming* that Plaintiff was never sanctioned under the Sexual Misconduct Policy, and that Coach 1's decision to deny Plaintiff's request for reinstatement was based on Plaintiff's disruptive impact on the team dynamic, and not allegations of sexual misconduct. This evidence was presented in the context of a contested hearing before the Court, with a full opportunity by opposing counsel to challenge it. While the College suggests that the Court may dispose of Plaintiff's breach of contract claim solely under Rule 12(b)(6) without considering these documents, Rule 12(d) permits the Court to convert a motion to dismiss a claim to a motion for summary judgment as to that claim when a party submits a matter outside the challenged pleading. *See Phat Van Le v. Univ. of Med. & Dentistry of N.J.*, 379 F. App'x 171, 176 (3d Cir. 2010) (holding that conversion was proper when defendant university submitted exhibits containing additional school policies and disciplinary records).  In the event that the Court considers it warranted, and in the alternative, the College submits that the Court should grant judgment on Plaintiff's breach of contract claims on the same grounds articulated in its opinion denying Plaintiff's request for injunctive relief.

II.  **Plaintiff fails to allege facts sufficient to support his Title IX deliberate indifference claim because he fails to allege discrimination on the basis of sex, that he was subject to actionable harassment, or that Haverford's response to notice of alleged harassment was clearly unreasonable.**

To state a claim for Title IX deliberate indifference Plaintiff must allege, among other things, (1) sexual harassment that is "so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school,"; and (2) that the defendant's "response to the harassment ... is clearly unreasonable in light of the known circumstances." *Doe v. Princeton Univ.*, 790 F. App'x 379, 384 (3d Cir. 2019) (quoting *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 650 (1999)). Regardless of the theory under which a Title IX claim is brought, Plaintiff must also allege facts that, if true, support a plausible inference that the College's allegedly discriminatory treatment alleged was based on his sex. *Doe v. Univ. of Scis.*, 961 F.3d 203, 209 (3d Cir. 2020) ("[T]o state a claim under Title IX, the alleged facts, if true, must support a plausible inference that a federally-funded college or university discriminated against a person on the basis of sex.").

A.  **Plaintiff fails to allege that Haverford's response to any alleged harassment he experienced amounted to discrimination on the basis of sex.**

To state a Title IX claim, a plaintiff must allege facts he was discriminated against because of sex. *Saravanan v. Drexel Univ.*, No. CV 17-3409, 2017 WL 4532243, at *4 (E.D. Pa. Oct. 10, 2017) (citing Winter v. *Pennsylvania State University*, 172 F. Supp. 3d 756, 776 (M.D. Pa. 2016)). Conclusory assertions of sex-based discrimination are insufficient to satisfy this requirement on a motion to dismiss. *Id.*

Here, Plaintiff alleges only that he "was the target of gender-based harassment," in the form of individuals discussing allegations that he had engaged in sexual assault and misogynistic behavior and that he was the subject of bullying and social exclusion as a result of those allegations.

Plaintiff then argues that Haverford was deliberately indifferent to notice of the alleged gender-based harassment. Missing from his Amended Complaint, however, are any facts by which one could plausibly infer that Haverford's response was a result of Plaintiff's sex. Plaintiff points to the fact that one of the individuals who accused him of sexual assault was a woman, and asserts, with no factual support, that Haverford "likely" declined to initiate disciplinary proceedings against her because she was a woman and because she was standing up for women whom she believed to have been sexually assaulted by men. (Am. Compl. ⁋ 192).

A failure to plead facts showing that a defendant treated a plaintiff differently because of their sex is fatal to a Title IX claim. In *Doe v. Princeton*, the Third Circuit held that plaintiff's allegations that he would not have been subject to discriminatory acts if he were a female victim and that the defendant did not believe that male students could be victims were too "generalized" and "conclusory" to raise an inference of disparate treatment. 790 F. App'x 379, 383 (3d Cir. 2019) (quoting *Doe v. Columbia Coll. Chi.*, 933 F.3d 849, 855 (7th Cir. 2019)); *see also Dempsey v. Bucknell Univ.*, No. 4:11-CV-1679, 2012 WL 1569826, at *20 (M.D. Pa. May 3, 2012) (rejecting Title IX claim based on allegation that virtually all cases of campus sexual assault involve male respondents, and that the university's processes for adjudicating sexual misconduct accusations virtually assured a finding of guilt).

The same holds true here – Plaintiff's claim is supported only by a conclusory allegation that the College failed to respond to alleged harassment because his alleged harasser was a woman standing up for other women who were victims of sexual assault. Further, Plaintiff fails to establish that any alleged harassment he was subject to was based on his sex – he merely alleges that he was the target of "harassment" because he was believed to have committed sexual assault, not because

he identifies as male. Plaintiff fails to state a Title IX claim for this reason alone, and his claim should be dismissed.

### B.      Plaintiff fails to allege that he was subject to actionable harassment.

To state a claim under Title IX, Plaintiff must allege harassment that is so "severe, pervasive, and objectively offensive that it can be said to deprive [Plaintiff] of access to the educational opportunities or benefits provided by the school." *Frazer v. Temple Univ.*, 25 F. Supp. 3d 598, 613-14 (E.D. Pa. 2014) (quoting *Davis*, 526 U.S. at 650). In *Frazer*, this Court held that plaintiff failed to meet that burden when she alleged that, following notice to the university of sexual assault, her assailant repeatedly followed her around campus, waited outside her dormitory, and on one occasion stood directly beside her while she conversed with another student. *Id.* at 614. In *Doe v. Princeton*, the court held harassment was not actionable under Title IX where Plaintiff alleged that classmates harassed him on campus by "yelling out a gay slur to him and calling him a liar." 790 Fed. Appx. at 384.

Here, Plaintiff alleges that, after rumors began circulating on campus and social media that he had committed sexual assault, he was "body-checked" by an unknown individual (Am. Compl. ¶ 105) and that several individuals on campus declined to engage with him socially. (*Id.* at ¶¶ 106-07). Similar to the claims in *Frazer* and *Princeton*, these allegations fail to rise to the level of harassment that is "severe, pervasive, and objectively offensive" as required to state a claim for Title IX.

### C.      Plaintiff fails to allege that Haverford's response to alleged harassment was clearly unreasonable under the circumstances.

Finally, Plaintiff's Title IX claim must be dismissed because he fails to allege that Haverford's response to any alleged harassment was clearly unreasonable under the circumstances. In order to avoid liability under Title IX, a school "must merely respond to known peer harassment

in a manner that is not clearly unreasonable." *Frazer*, 25 F. Supp. 3d at 613 (quoting *Davis*, 526 U.S. at 649). Whether a school's response to harassment is clearly unreasonable is a question for the court on a motion to dismiss. *Id.* Courts afford schools "substantial deference in cases of alleged student-on-student harassment; victims of harassment have, for example, no 'right to make particular remedial demands.'" *Dawn L. v. Greater Johnstown Sch. Dist.*, 586 F. Supp. 2d 332, 369 (W.D. Pa. 2008). (quoting *Davis*, 526 U.S. at 648)). To establish deliberate indifference, a plaintiff must show that the school's response to peer harassment amounted to "an official decision by the recipient [of federal funds] not to remedy the violation[s]." *Id.* (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290, (1998)).

Here, Plaintiff alleges that on April 7, 2022, he requested that Haverford "convene a disciplinary panel to investigate the actions of the students involved in the gender-based harassment…" Following that conversation, the College offered to provide Plaintiff supportive measures (Am Compl. ¶ 93); Plaintiff's Advising Dean and the Dean of the College spoke with "Captain A" and instructed him not to be involved with the issue (*Id.* at ¶¶ 94-95); the Title IX Coordinator spoke with students (including Captain A) involved in the initial spreading of the allegations against Plaintiff and told them she could assist with individuals who wish to make a Title IX complaint, but confirmed to them that no complaint existed against Plaintiff and instructed them "not to entertain rumors" (*Id.* at ¶ 99).

Stripped of conclusory allegations, Plaintiff's Title IX claim appears to be based on the allegation that Haverford did not convene a disciplinary panel at his request. But Plaintiff is not entitled to the remedy of his choosing nor is he entitled to dictate the disciplinary processes of the College, *which clearly provide that allegations of sexual harassment are addressed under its*

*Sexual Misconduct Policy*, (*id.* at ¶¶ 157-60), and Plaintiff does not (and could not) allege he filed a formal complaint under that policy.

In sum, even if the alleged harassment Plaintiff was subject to were actionable under Title IX (it is not), Haverford was only required to respond in a way that is not clearly unreasonable. On the face of the complaint, Haverford's response was not "an official decision not to remedy the alleged violations." As such, Plaintiff's claim must be dismissed.

**III.    Plaintiff fails to state a claim for false light against Haverford and Coach 1 because he fails to allege publicity, and the alleged statements are insufficient to support a claim for false light.**

Pennsylvania courts have adopted the Restatement's definition of the tort of publicity placing a person in a false light: "One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy if (a) the false light claim in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Fanelle v. LoJack Corp.*, 79 F. Supp. 2d 558, 563 (E.D. Pa. 2000) (quoting Restatement (Second) of Torts § 652E (1977)). Plaintiff's claim fails here because: (1) he fails to allege the publicity element of a false light claim; and (2) the alleged statements or conduct of Haverford and Coach 1 are insufficient to support a false light claim.

**A.    Plaintiff fails to allege facts sufficient to establish publicity element as to Haverford and Coach 1.**

To state a claim for false light, Plaintiff must allege that Haverford and/or Coach 1 gave "publicity" to the matter at issue. *Id.* Publicity is defined as making the matter public "by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Byars v. Sch. Dist. of Philadelphia*, 942

F. Supp. 2d 552, 567 (E.D. Pa. 2013) (citing *Harris by Harris v. Easton Publ'g Co.*, 483 A.2d 1377, 1384 (Pa. Super. Ct. 1984)). The publicity element of a false light claim differs from "publication," as used in the defamation context, as publicity requires that the communication "reaches, or is sure to reach, the public." *Id.* The publicity element is not met where a fact concerning the plaintiff's private life is communicated to a single person or small group of persons. *Id.*

In *Byars*, the court held that the plaintiff failed to adequately state the publicity element of his false light claim where he alleged that he was suspended and physically escorted out of his workplace "in the presence of others," in conjunction with news articles regarding suspension of employees for alleged wrongdoing, because plaintiff had "not plausibly pled that the number of individuals was so large as to constitute publicity." *Id.* at 568. The court further held that the plaintiff's allegation that the defendants "knew or should have known that such information would be leaked and published in the media" was insufficient to carry his burden on a motion to dismiss because plaintiff did not allege that the defendants communicated the suspension to the media or to a large audience. *Id.*

Here, Plaintiff has not alleged that any communication by Haverford or Coach 1 that would lead the matter to become one of public knowledge. As to the College generally, Plaintiff does not allege any communications by Haverford concerning allegations that Plaintiff committed sexual assault that would reach, or be sure to reach the public. In fact, the Complaint cites to several instances in which College officials took pointed steps to advise individuals across campus that no Title IX complaint or investigation was pending against Plaintiff.

As to Coach 1, the Amended Complaint is similarly devoid of any allegations of communications that rise to the level of publicity for purposes of a false light claim. Plaintiff

alleges in a conclusory fashion that Coach 1 discussed the allegations of sexual assault with a small number of individuals on his athletic team. By Plaintiff's own admission, those individuals were already aware of the allegations against Plaintiff through other means. Plaintiff also alleges that during a March 22, 2022 meeting with approximately five individuals present, Coach 1 voiced concerns for Plaintiff's mental wellbeing. These allegations fail to rise to the level of publicity because the communications were not made to so many individuals as to become public knowledge, as necessary to state a claim for false light.

**B.      Plaintiff's removal from the roster cannot support his false light claim.**

In support of his false light claim, Plaintiff alleges that Haverford and Coach 1 "remov[ed] him from the sports team, and delet[ed] his name and information from the team website." (Am. Compl. ⁋ 206). However, courts have routinely found that allegations that a plaintiff was removed or ousted from an organization are insufficient to support a false light claim, even when such removal is effectuated with physical force and in the presence of others. *See Byars*, 942 F. Supp. 2d at 568; *see also Bhatti v. Republican Caucus of Pennsylvania House of Representatives*, No. 18-CV-2178, 2020 WL 3412661, at *7 (M.D. Pa. June 22, 2020) (holding that allegation that plaintiff's physical removal from workplace in the presence of others led to potential false conclusions was insufficient to sustain a false light claim, and collecting other cases holding same).

In *Byars* and *Bhatti*, courts applying Pennsylvania law held that a plaintiff's removal from their workplace was insufficient to support a false light claim, including where a plaintiff alleged that their removal could cause observers to draw false conclusions about them. The same logic extends to Plaintiff's removal from a sports team and roster here. The fact that Plaintiff's name appeared on the roster one day and not the next cannot support his false light claim, and Plaintiff's claim for false light against Haverford and Coach 1 must be dismissed.

23

**C.**     **Any alleged statements attributable to Coach 1 also fail to sustain a claim for false light because such statements are non-actionable opinion.**

"Cases in which challenged statements feature equivocal or cautionary language are routinely dismissed because the statements are non-actionable opinion." *Pace v. Baker-White*, 432 F. Supp. 3d 495, 512 (E.D. Pa. 2020), *aff'd*, 850 F. App'x 827 (3d Cir. 2021) (collecting cases applying Pennsylvania law holding same). In *Pace*, the court held that statements that allegedly implied that the plaintiff belonged to a set of police officers who engaged in violent, racist, and bigoted conduct, and thus was not fulfilling his oath of office, were not capable of defamatory[10] meaning because statements to that effect were statements of opinion by the defendant. *Id.* at 513.

Plaintiff appears to premise his false light claim in part on allegations that Coach 1 (a) discussed the fact that Plaintiff had been accused of sexual assault with a small number of teammates and coaching staff, who were already aware of the allegations; and (b) raised concerns he had about Plaintiff's mental health at a March 22, 2022 meeting. Much like in *Pace* and the cases cited therein, these alleged statements qualify as non-actionable opinion insufficient to support a false light or defamation claim. *First*, to the extent Plaintiff alleges that Coach 1 discussed the fact that allegations against Plaintiff existed (with teammates who were already aware of the allegations), such statements merely outline possibilities and are not intended to attack Plaintiff's reputation. *See Reardon v. Allegheny Coll.*, 926 A.2d 477, 484 (Pa. Super. Ct. 2007) (use of the phrase "might have" rendered statement non-actionable because it was "a strong indication that this statement [was] merely one outlining possibilities"). *Second*, regarding Coach 1's alleged statements regarding concerns of Plaintiff's mental health, such statements clearly express "a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming

---

[10] "Pennsylvania courts apply the same analysis to both defamation and false light. *Pace*, 432 F.Supp.3d at 502 n.7)(quoting *Hill v. Cosby*, 665 F. App'x 169, 177 (3d Cir. 2016)).

to be in possession of objectively verifiable facts" and are thus non-actionable opinion. *Pace*, 432 F.Supp.3d at 513 (quoting *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993)).

As a result, Plaintiff's false light claims are insufficient, and must be dismissed as a matter of law.

### D.    Coach 1's alleged statements to his team regarding allegations that Plaintiff committed sexual assault are not defamatory because they are privileged.

In the context of false light and defamation claims, "[c]ommunications are privileged when made on a proper occasion, from a proper motive, and in a proper manner . . . . This occurs when circumstances are such as to lead any one of several persons having a common interest in a particular subject matter correctly or reasonably to believe that facts exist which another sharing such common interest is entitled to know." *Maier v. Maretti*, 671 A.2d 701, 706 (Pa. Super. Ct. 1995) (citing *Beckman v. Dunn*, 419 A.2d 583 (Pa. Super. Ct. 1980)).[11] Pennsylvania courts have recognized a common interest privilege for individuals who share a common interest in the allegedly defamatory subject matter. *See Rankin v. Phillippe*, 211 A.2d 56, 58 (Pa. Super. Ct. 1965) ("The common interest of members of religious, fraternal, charitable or other non-profit associations, whether incorporated or unincorporated, is recognized as sufficient to support a privilege for communications among themselves concerning the qualifications of the officers and members and their participation in the activities of the society.") (citing Restatement, Torts § 596, Comment (d)).

---

[11] Because Pennsylvania courts have considered false light claims to be "closely allied to the law of defamation," courts apply the same standards to both false light and defamation claims, including the standard for privileged communications. *See Buschel v. MetroCorp.*, 957 F. Supp. 595, 598 (E.D. Pa. 1996) (applying the same privileged communication analysis to false light and defamation claims).

To survive a motion to dismiss, a plaintiff must plead abuse of a conditional privilege where, like here, "the potential relevance of a privilege is clear from the complaint." *Udodi v. Stern*, 438 F. Supp. 3d 293, 303 (E.D. Pa. 2020). A conclusory allegation that a statement is not subject to privilege is not entitled to a presumption of truth at the motion to dismiss stage. *Foster v. UPMC S. Side Hosp.*, 2 A.3d 655, 664–65 (Pa. Super. Ct. 2010) (citing *Insurance Adjustment Bureau, Inc. v. Allstate Ins. Co.*, 905 A.2d 462, 468 (Pa. 2006)).

Here, the alleged statements by Coach 1 to his team members concerning the sexual assault allegations are privileged because they constitute communications between a discrete group of individuals with a common interest in the allegedly defamatory subject matter. The members of Coach 1's athletic team shared a common interest in this matter, as evidenced by Plaintiff's admission that the team members were deeply concerned by the allegations, confronted Plaintiff with the allegations, and eventually reported the allegations to Coach 1.[12] Plaintiff's conclusory assertion that Coach 1's statements are not subject to privilege is not entitled to any deference on a motion to dismiss. Plaintiff's false light claim against Coach 1 should be dismissed with prejudice.

## IV.     Plaintiff fails to state a defamation claim against Coach 1.

"To state a claim for defamation under Pennsylvania law, a plaintiff must establish: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of the defamatory meaning; (5) the understanding by the recipient that the statement refers to the plaintiff; (6) special harm resulting

---

[12] Courts have also found statements concerning allegations of sexual assault on a college campus to be conditionally privileged for purposes of defamation claims where such statements are made to small groups of individuals in the interest of safety. *See Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 758 (D. Md. 2015) (recognizing that defamatory statements made regarding an alleged assault on college campus would enjoy a conditional privilege when made in furtherance of a legitimate interest in ensuring the alleged victim's personal safety).

to the plaintiff from its publication; and (7) abuse of a constitutionally privileged occasion." *Harris v. Saint Joseph's Univ.*, No. CIV.A. 13-3937, 2014 WL 1910242, at *7 (E.D. Pa. May 13, 2014). Plaintiff's defamation claim against Coach 1 fails because (a) similar to Plaintiff's false light claim, any alleged statements attributable to Coach 1 are non-actionable opinion and are privileged; and (b) the alleged statements by Coach 1 to his team regarding allegations that Plaintiff committed sexual assault are not defamatory because the team members were already aware of the allegations.

### A.     Coach 1's alleged statements are non-actionable opinion and are privileged.

Plaintiff's defamation claim against Coach 1 fails for the same reasons as his false light claim. Specifically, the alleged statements attributed to Coach 1 in the complaint qualify as non-actionable opinion insufficient to support a false light or defamation claim. *See Pace*, 432 F. Supp. 3d at 512. Further, Coach 1's alleged statements to his team members concerning the sexual assault allegations are subject to a common interest privilege as discussed above. *See Rankin*, 211 A.2d at 58.

### B.     Coach 1's alleged statements to his team regarding allegations that Plaintiff committed sexual assault are not defamatory because the team members were already aware of the allegations.

Whether an alleged statement is capable of defamatory meaning is a question for the Court. *Smith v. Pennsylvania*, No. CV 21-5473-KSM, 2022 WL 3139854, at *14 (E.D. Pa. Aug. 4, 2022) (citing *Graboff v. Colleran Firm*, 744 F.3d 128, 135–36 (3d Cir. 2014)). "A statement is defamatory if it tends to so harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Id.* (internal quotation marks omitted). In determining whether a statement is defamatory, a court must consider the context in which the statement was made "with an eye toward the effect [it] is fairly calculated to produce, the impression it would naturally engender, in the minds of the average persons among whom it is intended to circulate." (internal quotes and citations omitted). Thus, courts consider not

only the words of an allegedly defamatory statement, but the audience to whom the statement is made and the effect such a statement would have. *See Feldman v. Lafayette Green Condo. Ass'n*, 806 A.2d 497, 500 (Pa. Commw. Ct. 2002) (holding that in determining whether a statement is defamatory "we view the statement in its factual context, because the key in determining defamatory meaning is the effect the statement would produce on its intended audience.")

Here, Plaintiff alleges that in early 2022, rumors began to circulate on campus that Plaintiff had engaged in sexual assault and that those rumors eventually spread to Plaintiff's teammates, who then reported the allegations to Coach 1. (Am. Compl. ¶¶ 42, 45, 50). Plaintiff resigned from the team, and announced his resignation to the team via an email in which he referenced the "serious rumors against him," (*Id. at* ¶ 52) thereby himself publicizing and educating his teammates about the existence of these rumors (if they were not already aware).

Following Plaintiff's email, the team captains held an "athletes-only team meeting" where Plaintiff contends the teammates discussed the allegations against Plaintiff and his resignation from the team, though Plaintiff was not present at the meeting. (*Id.* at ¶ 53). Then, Plaintiff alleges, Coach 1 necessarily discussed the issue with members of the team in the context of considering Plaintiff's request to rejoin the team and evaluating the impact such a decision might have. (*Id.* at ¶ 63). Plaintiff does not specify the content of Coach 1's alleged statements, just that Coach 1 discussed the fact that such allegations existed with the very individuals who had reported such allegations in the first instance.

Viewed in their factual context, these alleged statements by Coach 1 are not capable of defamatory meaning because such statements could not have a defamatory effect on Plaintiff's former teammates, who were already aware of the existence of the rumors concerning Plaintiff. Coach 1's statements to his team, discussing allegations of which they were already aware, could

not have harmed Plaintiff's reputation. In fact, Coach 1 took action to rehabilitate any damage to Plaintiff's reputation when he facilitated a meeting with the team captains and the Title IX Coordinator, who confirmed to the captains that no formal complaint or Title IX investigation existed against Plaintiff. As a result, no alleged statement by Coach 1 was defamatory, and the claims against him must be dismissed.

**V.      Plaintiff's intentional infliction of emotional distress claim fails as to Haverford and Coach 1 because Plaintiff fails to allege extreme and outrageous conduct by those parties.**

To state a claim for intentional infliction of emotional distress ("IIED") under Pennsylvania law, a plaintiff must allege facts establishing that "(1) the defendant's conduct was extreme or outrageous; (2) the conduct was intentional or reckless; (3) the conduct caused emotional distress; and (4) the plaintiff's distress is severe." *Doe v. The Trustees of the Univ. of Pennsylvania*, 270 F. Supp. 3d 799, 826–27 (E.D. Pa. 2017). Pennsylvania courts only recognize a "sufficient basis" for such claims when "presented [with] the most egregious conduct." *Id.* at 827 (quoting *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998)). The alleged conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Id.*

Courts have routinely rejected claims supported by similar or more extreme allegations. In *The Trustees of the University of Pennsylvania*, this Court rejected the plaintiff's IIED claim against a university and university official in the context of sexual assault allegations against plaintiff where the plaintiff alleged that "University officials distorted the facts of Plaintiff's and [the complainant's] encounter, improperly attacked Plaintiff's credibility, unjustifiably branded Plaintiff a rapist, threatened Plaintiff with expulsion when expulsion was not justified, and ultimately imposed an unfair sanction." *Id.* (holding that such conduct was not "desperate and ultra extreme conduct . . . beyond all possible bounds of decency" giving rise to an IIED claim in

Pennsylvania and collecting cases holding same) (quoting *Hoy*, 720 A.2d at 754); *see also Harris*, No. CIV.A. 13-3937, 2014 WL 1910242, at *11-12 (dismissing IIED claim for failure to allege outrageous conduct where plaintiff alleged that university took disciplinary actions based upon false information and falsely portrayed plaintiff as a sex offender).

Similarly, Plaintiff fails to allege conduct by Haverford or Coach 1 that rises to the level of extreme or outrageous as necessary to state an IIED claim. At bottom, Plaintiff alleges that Haverford and Coach 1 failed to control the campus rumor mill or change the hearts and minds of some of the College's student body with regard to their impression of Plaintiff. This conduct cannot support a claim for IIED and Plaintiff's IIED claim against Haverford and Coach 1 must be dismissed.

## VI. Plaintiff's request for injunctive relief should be stricken because Plaintiff fails to allege facts warranting such relief.

In his prayer for relief, Plaintiff demands an injunction "ordering Haverford to restore John Doe's name to the team roster reflecting his membership for the 2021/2022 and 2022/2023 seasons," despite the fact that Plaintiff was not a member of the team during that time (Am. Compl. at 52). It is not clear under what theory Plaintiff is requesting such relief. The Supreme Court of Pennsylvania has held that specific performance is a disfavored remedy for breach of contract claims, except "where adequate remedy at law does not exist, **and** where justice requires it." *Toys "R" Us-Penn Inc. v. Discovery Zone, Inc.*, No. CIV. A. 95-2534, 1996 WL 47980, at *3 (E.D. Pa. Feb. 6, 1996) (quoting *Cimina v. Bronich*, 537 A.2d 1355, 1358 (Pa. 1988) (emphasis added). Plaintiff has not shown that such circumstances are present here. The requested injunctive relief is similarly not an appropriate remedy under Plaintiff's remaining claims because he has alleged no facts that would warrant such relief. *See Dixon v. Boscov's, Inc.*, No. CIV.A. 02-1222, 2002 WL 1740583, at *4 (E.D. Pa. July 17, 2002) (granting motion to strike request for injunctive relief

where plaintiff alleged no facts that would warrant the grant of injunctive relief because "[e]quitable relief is not available when a plaintiff has an adequate remedy at law").

While the Haverford Defendants maintain that all of Plaintiff's claims against them fail for the reasons set forth in this Motion, in the event that any such claims survive the motion to dismiss stage, the Haverford Defendants respectfully move this Court to strike Plaintiff's request for injunctive relief.

## **CONCLUSION**

For the foregoing reasons, and any other reasons that may appear to the Court, the Haverford Defendants respectfully request that the Court dismiss Plaintiff's First Amended Complaint as to Haverford and Coach 1 with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

Respectfully submitted,

**SAUL EWING LLP**

Date: April 11, 2023

s/ *Joshua W. B. Richards*
Joshua W. B. Richards/204315
Levi R. Schy/329199
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA  19102
(215) 972-7737 (Richards)
(215) 972-7803 (Schy)
Joshua.Richards@saul.com
Levi.Schy@saul.com
*Attorneys for Haverford Defendants*

31