IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN DOE | CIVIL ACTION NO. |
| Plaintiff, | No. 2:23-cv-00299-GAM |
| v. | |
| HAVERFORD COLLEGE, | |
| COACH 1, | |
| CAPTAIN A, and | |
| STUDENT 1 | |
| Defendants. | |

**DEFENDANT HAVERFORD COLLEGE AND COACH 1'S
REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**

Plaintiff's claims against the Haverford Defendants in this case ultimately amount to an attempt to hold the College liable for the breakdown of Plaintiff's relationships with his peers and his social standing at the College. But the College has no ability to dictate the social relationships of the adults who comprise its campus community and rightly does not endeavor to do so. Viewed in their best light, what Plaintiff's allegations boil down to is that his classmates and former teammates excluded him from a social environment of which he was previously a part due to allegations against him and other concerns surrounding his behavior. It is unfortunate that Plaintiff has found his social experience at the College to be lacking or, at times, even unfair. But the perceived injustices that Plaintiff alleges he has been subject to are not attributable to Haverford, and certainly do not give rise to cognizable legal claims against the Haverford Defendants. It is

inappropriate to expect Haverford to police the social relationships of its students, and this Court is an inappropriate venue through which to determine whether Plaintiff gets to be on a sports team when he has repeatedly evinced an inability to maintain a positive, working relationship with his would-be teammates.

Plaintiff's Opposition to the Haverford Defendants' Motion to Dismiss largely reads like a motion for reconsideration of the Court's Order denying his request for injunctive relief. While the standard of review on a motion to dismiss is different from that on a motion for injunctive relief, that difference is immaterial on questions of law. Here, the Court's prior decision that Plaintiff had not alleged he was subject to a formal complaint, was not investigated, and was not sanctioned under Sexual Misconduct Policy (*see* Memorandum, ECF No. 21) was based on uncontested allegations and questions of law – the express terms of the Sexual Misconduct Policy. Because interpretation of a contract is a question of law, not fact, *see Doe v. The Trustees of the Univ. of Pa.*, 270 F. Supp. 3d 799, 811 (E.D. Pa. 2017), the interpretation of the College's polices does not present new questions for the Court to decide.

Having already briefed these issues in the context of his failed motion for injunctive relief (*see* ECF Nos. 4, 13, 15, 18, 20, 21, 22), Plaintiff has responded to the Haverford Defendants' 31-page Motion to Dismiss with a 50-page, footnote-dense Opposition which largely attempts to supplement his already-amended complaint with new theories.[1] Despite its length, Plaintiff's brief fails to address the core deficiencies identified by the Court's prior orders and the Haverford Defendants' Motion.

---

[1] It is well established that a plaintiff is not permitted to amend his complaint by way of his opposition brief, and "courts may not consider facts alleged in an opposition to a motion to dismiss rather than in the complaint itself." *Mast v. Lafayette Coll.*, No. CIV.A. 13-4161, 2015 WL 409774, at *3 (E.D. Pa. Jan. 30, 2015); *see also Pennsylvania ex rel. Zimmerman v. Pepsico, Inc.*, 836 F.2d 173, 181 (3d Cir.1988) ("It is axiomatic the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

For starters, Plaintiff fails to address the fact that he has not identified any specific contractual terms granting Plaintiff an entitlement to participate in intercollegiate athletics on behalf of the College. Instead of meaningfully contending with the rule that when interpreting the provisions and intent of a contract between a private college and its enrolled students, a court must consider the entire context of a school's policies and procedures, Plaintiff doubles down on his theory that athletics policies have nothing to do with a case about participation on an athletics team.

Second, Plaintiff fails to address the absence of any facts suggesting that he was subject to sex-based discrimination actionable under Title IX, instead alleging generally that because his former friends did not want to continue to associate with him in the aftermath of allegations against him, the College must have been deliberately indifferent.

Third, Plaintiff musters no support for his contention that the College's accurate record-keeping reflecting who is and is not included on a team roster is sufficient to carry a false light or defamation claim.

Fourth, Plaintiff fails to address the fact that Coach 1's alleged statements (many of which Plaintiff concedes he lacks any knowledge of) cannot support a defamation claim because such alleged "statements" were privileged, non-actionable opinion, and/or not capable of a defamatory effect on the alleged recipients of such statements.

Fifth, Plaintiff fails to address that his allegations do not approach the standard for extreme and outrageous conduct necessary to state an intentional infliction of emotional distress claim under Pennsylvania law.

Finally, Plaintiff fails to explain under what theory he could conceivably be entitled to an order by this Court directing Haverford to falsify its records to include a fabrication: that Plaintiff was a member of the team during the past two years when he was not.

Plaintiff's failure to address the core deficiencies of his First Amended Complaint is fatal to his claims. Accordingly, the Court should grant the Haverford Defendants' Motion to Dismiss the claims against them, in their entirety, with prejudice.

**I.  Plaintiff fails to identify any specific contractual terms breached by Haverford and his proposed contractual interpretation scheme is incorrect and untenable.**

Despite how hard one might look, nowhere in Plaintiff's pleading appears any specific contractual term breached by Haverford. This conclusion is supported by the text of Haverford's policies, the facts alleged by Plaintiff, the prior conclusions of this Court, and common sense. *See Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)) (determining the plausibility of a claim on a motion to dismiss requires "the reviewing court to draw on its experience and common sense.").

Plaintiff's reading of his alleged contract with the College requires considerable logical gymnastics to follow. He asserts that the Sexual Misconduct Policy affords individuals, including Plaintiff, who have been accused of sexual misconduct but not adjudicated under the Policy, a shield from a wide-ranging list of, in some instances, completely innocuous actions that are run-of-the-mill occurrences on a college campus, like being assigned a paper, required attendance at an academic talk, being voted out of a leadership position, or being cut from a sports team. All that would be needed to avoid such an unwanted action is to assert an unfounded suspicion that the action is motivated by a belief that the student was guilty of sexual misconduct which they had been accused of, but the College declined to pursue. It would be nonsensical to interpret the plain language of the College's policies to have such a meaning.

4

Presented with a more complete and accurate representation of the contractual provisions governing Plaintiff's relationship with Haverford (that is, one that considers *all* the policies and procedures at play instead of singular lines plucked from the Sexual Misconduct Policy and removed from all context), Plaintiff doubles down on his strained breach of contract theory despite the unambiguous contractual language and common sense showing that Haverford did not breach any contractual duty owed to Plaintiff.

The alleged facts do not support the conclusory allegation that Coach 1's decision not to allow Plaintiff back on the team was, in any way, a sanction under the Sexual Misconduct Policy. Instead, it is clear that Coach 1's roster decision was in furtherance of his charge, by express College policy, to foster athletic teams that "establish a positive competitive environment." (ECF No. 30, Ex. B at 3.) Coach 1's decision not to allow Plaintiff back on the team was in response to the disruptive impact that Plaintiff's presence imparted on the team's ability to function and not a sanction under the Sexual Misconduct Policy. The bottom line is that Plaintiff has identified no contractual term, breached by Haverford, entitling him to participation in intercollegiate athletics. As such, his breach of contract claim must be dismissed.

**II.     Plaintiff does not demonstrate that he was subject to sex-based discrimination actionable under Title IX.**

  **A.     Plaintiff has not alleged sex-based discrimination.**

In his opposition, Plaintiff wrongly asserts that he has stated a claim for sex-based discrimination because the College reacted differently to two very different reports. He contends that because allegations leveled against him suggesting that Plaintiff had raped another student were treated differently than his report that a different student (Student 1) *accused him of sexual assault* via a social media post, the College engaged in sex-based discrimination. The holes in this

theory are substantial and *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022) crumbles under the weight Plaintiff tries to place on it.

In *Princeton*, the court considered a university's allegedly disparate response to dual complaints of intimate relationship violence by a male and female student who had been involved in a mutually physically abusive relationship *with each other*. *Id.* at 340. The female student threatened the male student: "take a year off and nothing will happen to you." *Id.* After both students complained to the university, the university allegedly punished the male student for violating the no contact order between them but not the female student. *Id.* at 341.

Similar facts are not at play here. First, at issue in *Princeton* was the institution's alleged failure to discipline two students, one male and one female, for identical conduct. *Princeton*'s persuasiveness evaporates from the jump here because it is undisputed that *no one* was disciplined under the Title IX process at all. Plaintiff concedes no Title IX complaint was filed against him, and, although he pleads very artfully when it comes to his complaints about the female student, he pointedly *does not* allege he ever filed a formal Title IX Complaint against her. So what it really comes down to is that Plaintiff's coach asked him not to rejoin the team, while the female student was not asked to leave a College activity? The dots are hard to connect.

Just as important, the conduct at issue is not the same. Even taking Plaintiff's allegations as true, he was subject to statements by students on campus suggesting that Plaintiff had engaged in sexual assault, whereas his proposed comparator was accused of posting on social media about allegations that Plaintiff had committed sexual assault. This is apples and oranges, and does nothing to support Plaintiff's allegation that he was discriminated against on the basis of his sex. *See Saravanan v. Drexel Univ.*, No. CV 17-3409, 2017 WL 5659821, at \*6 (E.D. Pa. Nov. 24, 2017) (holding that a male plaintiff and female student were not similarly situated as required to

6

plead a Title IX claim where plaintiff failed to allege that they had been accused of the same conduct, regardless of the fact that both students had been accused of sex-based misconduct in some form).

### B. Plaintiff has not alleged that he was subject to actionable harassment under Title IX.

Plaintiff asserts in his opposition, with no legal support, that "[i]f bullying and harassment against someone because they made a sexual assault claim is sex-based harassment, then bullying and harassment against someone because they were reported to have committed sexual assault is also sex-based." (Opp. at 33.) Not only does Plaintiff fail to buttress that assertion with any legal support, he doesn't even attempt to explain the logic behind this fallacy. Plaintiff selectively quotes *Doe v. Manor College* to suggest that bullying by third parties was the basis on which the court denied summary judgment to the defendant on a deliberate indifference claim, but that summary is inaccurate.

*Manor* involved a student who alleged that she was sexually assaulted by three individuals in a college dorm and that the college was deliberately indifferent to the report of sexual assault and related reports concerning the victim's safety concerns. Beyond briefly nothing that "[a] jury could also find that Ms. Doe was being harassed by friends of [her alleged assailants], and perhaps, even [her alleged assailant] after she made the complaint of sexual assault," the court concentrated its deliberate indifference analysis on the college's failure to accommodate the plaintiff's safety concerns despite repeated requests for specific accommodations, forcing her to share residence hall and classroom space with someone whom she had accused of sexual assault, evidence showing that college administrators viewed the plaintiff as "a bothersome student and/or repeat emailer," and the fact that the college evicted plaintiff from the only dorm on campus. *Id.* at 165.

7

*Doe v. Manor College*, and the out-of-circuit cases cited by plaintiff for the same argument are inapposite to the circumstances here.[2] Plaintiff does not allege that he was sexually assaulted or that he was harassed for reporting that he was sexually assaulted. Plaintiff only alleges that he was excluded on the basis that he was believed to be a perpetrator of sexual assault. More on point, "[c]ourts in this District have recognized on several occasions that persons accused of being racist are not the subjects of discrimination 'based on race' under federal anti-discrimination law." *Doe v. Abington Friends Sch.*, No. CV 22-0014, 2022 WL 16722322, at *6 (E.D. Pa. Nov. 4, 2022). A much more logical construction than Plaintiff's is that if individuals accused of racism are not subjects of discrimination based on race under statutes prohibiting race discrimination, individuals accused of sexual assault are not subjects of sex discrimination under Title IX. Plaintiff's factual allegations raise no inference that he would have been treated any differently, by Haverford or its student body, if he were a woman accused of rape.

Plaintiff focuses his opposition on allegations about the impact that being excluded had on him. (Opp. at 35-36.) The College has no reason to doubt Plaintiff's experience. But the analysis under Title IX is not how the conduct affected Plaintiff, but whether the conduct was "objectively severe or pervasive enough that a reasonable person would agree that it is harassment." *Lansberry v. Altoona Area Sch. Dist.*, 318 F. Supp. 3d 739, 749 (W.D. Pa. 2018) (quoting *Butler v. Mountain View Sch. Dist.*, No. 3:12-CV-2038, 2013 WL 4520839, at *6 (M.D. Pa. Aug. 26, 2013). Plaintiff alleges that he was "body-checked" by an unknown individual (he alleges no facts connecting this incident to allegations of sexual assault) and that several individuals on campus declined to engage with him socially. (Am. Compl. at ¶¶ 105-07). Such conduct is not so objectively severe or pervasive that it can be said to deprive a reasonable person of access to educational opportunities.

---

[2] Several of those cases involve Title IX retaliation claims, which Plaintiff has not asserted here.

8

Plaintiff has failed to allege that he was subject to actionable, sex-based harassment under Title IX and his claim must be dismissed.[3]

### C. Plaintiff fails to explain how Haverford's response to "alleged harassment" was clearly unreasonable under the circumstances.

Plaintiff's Title IX claim fails for lack of actionable harassment, but even if he had alleged actionable harassment, he fails again at the "clearly unreasonable" prong. Plaintiff stakes his argument on his contention that Haverford did not acquiesce to his preferred outcome: a disciplinary panel to be convened against certain students. But that is not the standard under Title IX, nor is it enough for Plaintiff to suggest the College's response was ineffective. Instead, Plaintiff must show that Haverford's response amounted to "an official decision by the recipient [of federal funds] not to remedy the violation[s]." *Dawn L. v. Greater Johnstown Sch. Dist.*, 586 F. Supp. 2d 332, 369 (W.D. Pa. 2008). (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290, (1998)).

Once again, Plaintiff can only point to conclusions instead of facts. Plaintiff's own allegations make clear that officials from the College worked extensively with Plaintiff to provide support, check in on Plaintiff, instruct other students not to be involved with the matter, and confirm to multiple individuals that no Title IX complaint existed against Plaintiff. (*See* Am Compl. ¶¶ 93-95, 99.) While that was not the response Plaintiff asked or hoped for, it is not enough to plead a claim under Title IX.

---

[3] Plaintiff circularly asserts that by pointing out that the Policy governing allegations of sex-based harassment is the Sexual Misconduct Policy, Haverford admits that Plaintiff asserted "a plausible claim of gender-based harassment and bullying in potential violation of Title IX." Haverford makes no such admission. The alleged "harassment" Plaintiff faced does not rise to the level of sex-based harassment under Title IX or the Sexual Misconduct Policy.

**III.   Plaintiff fails to confront the deficiencies of his false light and defamation claims.**

Plaintiff fails to cite any legal authority supporting his contention that Haverford's accurate record-keeping practices reflecting who is and is not included on a team roster is sufficient to carry a false light or defamation claim, and fails to meaningfully distinguish the clear contrary authority cited by the College. (*See* Def. Br. at 23.)

Plaintiff also fails to meaningfully engage with the fact that Coach 1's alleged statements cannot support a defamation claim because such "statements" were privileged, non-actionable opinion, and/or not capable of a defamatory effect on the alleged recipients of such statements. Crucially, Plaintiff admits that he "was not present for the team meetings between Coach 1, the assistant coaches, and [Plaintiff's] teammates and therefore cannot recite precisely what was said." (Opp. at 43.) Indeed, with regard to these communications, Plaintiff can only muster an allegation that Coach 1 discussed the fact that Plaintiff had been accused of sexual assault with a small number of teammates and coaching staff, who were already aware of the allegations.

On consideration of a motion to dismiss, Plaintiff is entitled to a presumption of truth concerning the facts he has actually pled. He is not entitled to the far-flung inferences about the content of alleged conversations for which he was not present and which he asserts through conclusory allegations. As such, his false light and defamation claims against the Haverford Defendants must be dismissed.

**IV.   Plaintiff fails to confront the deficiencies of his intentional infliction of emotional distress claims.**

Plaintiff's best response to clear legal authority cited by Haverford showing that Plaintiff has failed to approach the standard for his intentional infliction of emotional distress claim is to again fall back on his thoroughly debunked assertion that he was sanctioned by the College for committing sexual assault, and by pushing his false claim (which he admits is not based in personal

10

knowledge or any actual alleged facts) that Haverford was aware that the allegations that Plaintiff committed sexual assault were without merit.

Rather than deal with the authoritative case law on point analyzing Pennsylvania law, Plaintiff points to an out-of-circuit case analyzing Rhode Island law. Irrelevant as it is to this proceeding, that case is also inapposite these circumstances. Plaintiff omits that the court in *Doe v. Brown University* focused their intentional infliction of emotional distress analysis on allegations that, the day the plaintiff was discharged from the hospital for a suicide attempt premised on his university's charges against him, university administrators insisted on meeting with plaintiff, against the express advice of doctors, to inform the plaintiff that he was suspended because of "new, facially dubious and seemingly trivial allegations" and threaten the plaintiff with "claims that need not have been advanced that evening." 43 F.4th 195, 209-11 (1st Cir. 2022). Plaintiff alleges no facts that come close to those described in *Doe v. Brown University*, and certainly not the standard for intentional infliction of emotional distress under Pennsylvania law. As such, his intentional infliction of emotional distress claims must be dismissed.

## CONCLUSION

For the foregoing reasons, the reasons set forth in the Haverford Defendants' Motion to Dismiss, and any other reasons that may appear to the Court, the Haverford Defendants respectfully request that the Court dismiss Plaintiff's claims against them, in their entirety, with prejudice.

Respectfully submitted,

**SAUL EWING LLP**

Date: May 25, 2023

s/ *Joshua W. B. Richards*
Joshua W. B. Richards/204315
Levi R. Schy/329199
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA  19102
(215) 972-7737 (Richards)
(215) 972-7803 (Schy)
Joshua.Richards@saul.com
Levi.Schy@saul.com

*Attorneys for the Haverford Defendants*

**CERTIFICATE OF SERVICE**

I, Joshua W. B. Richards, certify that on this date I filed via the ECF system a true and correct copy of the foregoing **DEFENDANT HAVERFORD COLLEGE AND COACH 1'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**, which constitutes valid service on the following registered users:

| | |
|---|---|
| Patricia M. Hamill, Esquire<br>Clark Hill<br>Two Commerce Square<br>2001 Market Street, Suite 2620<br>Philadelphia, PA 19103<br>phamill@clarkhill.com<br><br>*Attorney for Plaintiff John Doe* | Andrew S. Gallinaro, Esquire<br>Clark Hill<br>Two Commerce Square<br>2001 Market Street, Suite 2620<br>Philadelphia, PA 19103<br>agallinaro@clarkhill.com<br><br>*Attorney for Plaintiff John Doe* |

Date: May 25, 2023

s/ *Joshua W. B. Richards*
Joshua W. B. Richards/204315
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
(215) 972-7737
Joshua.Richards@saul.com

*Attorney for the Haverford Defendants*