UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| JOHN DOE | : Civil Action No. 2:23-00299-GAM |
| Plaintiff, | : |
| v. | : |
| HAVERFORD COLLEGE, | : |
| COACH 1, | : |
| CAPTAIN A, and | : |
| STUDENT 1 | : |
| Defendants. | : |

**REPORT OF RULE 26(f) MEETING**

In accordance with Federal Rule of Civil Procedure 26(f), counsel for the parties conferred on <u>October 24, 2023</u> and submit the following report of their meeting for the Court's consideration:

Date of Rule 16 Conference: <u>November 16, 2023</u>; Time of Rule 16 Conference: <u>10:30 a.m</u>.

**1.      Discussion of Claims, Defenses, and Relevant Issues**

    (a)      <u>Plaintiff's Statement</u>:

        (1)      *Factual Summary*

At all relevant times in this case, Plaintiff John Doe ("John") was an undergraduate student at Defendant Haverford College. In the fall of 2019, during John's first semester at Haverford, John joined one of Haverford's varsity athletic teams. In the fall of 2021, Defendant Coach 1, the coach of Plaintiff's team, selected John as one of four captains of the team.

In January or February 2022, Defendant Captain A, another co-captain of the team, began circulating a false rumor that John had sexually assaulted a female student on campus (the "false

51219616.3

rumor"). Captain A, who held animus toward John because he had disagreed with John on a controversial campus issue, informed Coach 1 and his teammates about the false rumor. Captain A had no knowledge about whether the rumor was true. Nevertheless, Captain A took it upon himself to enlist the help of several teammates to approach Coach 1 to share the false rumor and to seek John's removal from the team. Then, on information and belief, Coach 1 also began sharing the false rumor with other coaching staff and team members.

On the evening of February 3, 2022, Captain A, the two other co-captains, and another teammate approached John about the false rumor. Captain A and the other teammates did not provide John with any details beyond the allegation that John had sexually assaulted a female student. John, knowing that he had never sexually assaulted anybody, denied the allegation. This was the first of several times that Captain A was informed—unequivocally—that the rumor that he had been spreading was false. But this did not stop Captain A from further circulating the false rumor.

The next day, on February 4, 2022, Captain A e-mailed John purportedly on behalf of himself and the other co-captains, stating that "we do not think it is in the best interest of the team for you to be a part of this team anymore." Later that day, John reached out to Coach 1, who told John that he had reported the rumor to Haverford's Title IX office for further investigation. Coach 1 instructed John to step away from the team until the Title IX process was resolved. John followed Coach 1's instruction and resigned from the team "until further notice." That evening, Captain A and the other co-captains held an athletes-only team meeting in which Captain A further defamed John by telling teammates that John had been kicked off the team for committing sexual assault.

After receiving notice of the false sexual assault allegation from Coach 1, Haverford's Title IX Office concluded that the allegation was unsubstantiated and confirmed that no formal

51219616.3

complaint had been made against John by anyone. On February 16, 2022, the Title IX Coordinator explicitly told John that she had seen nothing that warranted an investigation; that he was a student in good standing; and that he should continue with his life at Haverford as normal. Several months later, the Title IX Coordinator told John that she had met with Captain A and another student who was involved in spreading the false rumor and told them that her office's role was not to entertain rumors.

Following John's meeting with the Title IX Coordinator, John told Coach 1 that he wanted to re-join the team. John told Coach 1 that there had been no Title IX complaint made about him and the Title IX Coordinator had told him to resume regular activities. However, Coach 1 refused to reinstate John.

On March 22, 2022, John had a meeting with Coach 1, Captain A and the other co-captains, the Title IX Coordinator, the Athletic Director, and a Senior Associate Dean to discuss his request to be reinstated. During this meeting, the Title IX Coordinator confirmed that no complaint had ever been filed against John, and that no Title IX investigation was ongoing or contemplated. Nevertheless, during the meeting, Captain A again accused John of sexual assault and argued that he should be kept off the team and prohibited from using Haverford athletic and other facilities. Most of the meeting focused on the false rumor against John, John's lack of repentance for something that he did not do, and whether it was possible to change Haverford's policies to make it easier to remove individuals from varsity sports teams based simply on a rumor or allegation of sexual misconduct. Coach 1 then defamed John by stating repeatedly that he had mental health problems and should leave Haverford to obtain serious psychological help, indicating his belief that the rumor was true. Coach 1 declared again that John would not be permitted to rejoin the team.

On the next day, March 23, 2022, Coach 1 sent an e-mail message to John telling him again to get "some really good psychological therapy" as his "best chance of getting well" and that he would be better off leaving Haverford altogether. Haverford administrators later admitted to John and his parents that Coach 1's email was inappropriate, and—more importantly—that Coach 1 mishandled the rumor about John by taking matters into his own hands. But John was still not permitted to re-join the team.

Following the March 22, 2022 meeting and Coach 1's inappropriate comments on the next day, John had numerous communications and meetings with Haverford officials in an attempt to be reinstated—all of which Haverford rejected.

On March 27, 2022, the false rumor about John—which Captain A and others had fueled—was circulated on social media. Student 1 posted that there is a group of Haverford students that frequently engages in sexual assault and encouraged readers to bully them. Student 1 named John and several others. Student 1 never, before or after her defamatory posts, reached out to John about whether her statements were true or false.

(2) *Legal Claims*

**Breach of contract claim against Haverford:** Coach 1's instruction for John to step away from the team—and Coach 1's and Haverford's subsequent refusals to reinstate him to the team—violated Haverford's Sexual Misconduct Policy and thus its contract with John. The Sexual Misconduct Policy states that "[r]eports of Sexual Misconduct committed by any student . . . of the Haverford community will be resolved according to the procedures outlined in this Policy, unless otherwise noted." The policy promises that Haverford will not issue a disciplinary sanction arising from an allegation of Sexual Misconduct without holding a Hearing and permitting an Appeal. Upon a determination of responsibility, the Policy permits Haverford to impose a range of sanctions, including: removal from a team and revocation of leadership position. The report of

alleged sexual misconduct by John triggered the Sexual Misconduct Policy. Coach 1 removed John from the team based on that report. Coach 1 and Haverford also denied John's repeated requests for reinstatement based on that report. But Haverford held no hearing and made no determination of responsibility that John had committed any sexual misconduct. Therefore, both Haverford's removal of John from the team and Haverford's subsequent denials of his requests for reinstatement, violated Haverford's Sexual Misconduct Policy and thus its contract with John.

**Defamation claims against Coach 1, Captain A, and Student 1:** Coach 1, Captain A, and Student 1 all published statements stating that John had committed sexual assault, which clearly impute a defamatory meaning. A false accusation of sexual misconduct is defamation per se under Pennsylvania law. Coach 1 also published statements alleging that John was mentally ill. The burden is on Defendants to prove the truth of their defamatory statements.

Defendants have asserted that their defamatory statements are conditionally privileged, an assertion as to which they have the burden of proof. Plaintiff disagrees that any of Defendants' defamatory statements are privileged. And even if the statements were conditionally privileged, that privilege is vitiated if the statements are actuated by malice or negligence, are made for a purpose other than that for which the privilege is given, made to a person not reasonably believed to be necessary for the purpose of the privilege, or if they included defamatory matter not reasonably necessary for the purpose of the privilege.

**Tortious interference with contract claims against Captain A and Student 1:** Haverford's policies and procedures, including Haverford's Sexual Misconduct Policy, constitute a contractual relationship with Plaintiff. Captain A and Student 1 knew of this policy but pressured Haverford and the larger community to act against John despite the lack of any complaint, hearing, or finding of responsibility against Plaintiff. Captain A even advocated for a change in Haverford

5

policy that would permit the continued exclusion of Plaintiff from the team, as well as his exclusion from the College's athletic facilities and from other College services—despite the absence of a determination, or even a formal complaint, of sexual misconduct. This interference was improper, unprivileged, and lacked any legal justification.

**Intentional infliction of emotional distress claims against Captain A and Student 1:** Defendants' conduct in wrongfully circulating the false rumor against John, as alleged above and in the First Amended Complaint, was intended to inflict emotional distress on him and actually had that effect. Neither Captain A nor Student 1 had any knowledge that John had sexually assaulted anyone (and John had not assaulted anyone). In fact, Captain A was told repeatedly that this rumor was false. Captain A also knew that the purported victim refused to file a complaint against Plaintiff. Further, Captain A's conduct was partially motivated by personal malice, in that Captain A previously disagreed with Plaintiff's position on a controversial campus issue. Student 1's baseless public posts claiming that Plaintiff was a sexual assaulter—and explicitly calling for others to bully him—were dangerous and egregious. The actions of Captain A and Student 1 caused Plaintiff to suffer emotional distress.

      (b)     <u>Haverford Defendants' Statement</u>:

Plaintiff John Doe (Plaintiff) is an alumnus of Haverford College ("Haverford" or the "College") where he was a member and captain of one of the College's varsity athletic teams coached by Coach 1 (Haverford and Coach 1 are referred to together herein as the "Haverford Defendants). In or about February 2022, while Plaintiff was an enrolled student at the College, Plaintiff's co-captains approached him regarding concerns they had, including allegations that he had sexually assaulted another student, and requested that Plaintiff resign from the team. In response to the co-captains' request and a conversation with Coach 1, Plaintiff agreed to resign and sent an email to the team stating his reasons for doing so.

Coach 1, as required as a mandated reporter at the College, reported the allegations of sexual assault to Haverford's Title IX Coordinator. Shortly thereafter, Plaintiff met with the Title IX Coordinator, who confirmed that she had received the report from Coach 1, but that no formal complaint had been asserted against Plaintiff under the College's Sexual Misconduct Policy (the "Policy"). The Policy sets forth the procedures under which accusations of sexual assault at Haverford are to be addressed including the imposition of sanctions. Plaintiff then requested that he be permitted to rejoin the athletic team. Coach 1, in consultation with Plaintiff's former teammates, denied Plaintiff's requests because it was clear that Plaintiff's participation on the team would be detrimental to team cohesion, morale, and performance.

Plaintiff asserts that exclusion from the team is an impermissible sanction under the College's Policy and amounts to a breach of contract by the College (Count I) and that Coach 1's conduct constitutes defamation (Count V).[1]

Haverford contests these theories and contends that the Policy is inapplicable here because no formal complaint was asserted against Plaintiff under the Policy and he was never sanctioned by the College pursuant to the Policy. Specifically, Haverford contends that Plaintiff resigned from the team voluntarily and Coach 1's decision to deny Plaintiff's requests for reinstatement was a valid exercise of Coach 1's discretion under Haverford athletic policy granting coaches broad discretion to manage their team rosters. Representing the College in varsity athletics is a privilege, not a right. Furthermore, Coach 1's decision to deny Plaintiff's requests for reinstatement was in response to concerns that Plaintiff's participation would negatively impact team cohesion, morale,

---

[1] The claims referenced herein include those that remain in the case at this time. On August 7, 2023, the Court granted in part the Haverford Defendants' Motion to Dismiss and dismissed Plaintiff's Title IX (Count II), false light (Count III), and intentional infliction of emotional distress (Count IV) claims asserted against the Haverford Defendants, with prejudice. (*See* ECF No. 47).

51219616.3

and performance, and was not in response to allegations that Plaintiff committed sexual assault or Coach 1's belief in any such allegations.

Further, the Haverford Defendants contend that any statements by Coach 1 were not defamatory for multiple reasons, including but not limited to the fact that such statements were subject to a common interest privilege and/or incapable of defamatory meaning.

(c)   Captain A's Statement:

Captain A incorporates by reference Haverford Defendants' statement. Captain A also contends that any statements by Captain A were not defamatory for multiple reasons, including but not limited to the fact that such statements were subject to a common interest privilege, were incapable of defamatory meaning, and such statements were substantially true.

Further, Captain A contends that Plaintiff's intentional infliction of emotional distress claim (Count IV) is frivolous and fails as a matter of law.[2]

Finally, Captain A maintains that Plaintiff's allegations do not give rise to a tortious interference with contract claim (Count IV) because Plaintiff cannot demonstrate that Captain A acted for the specific purpose of causing harm to the Plaintiff and/or that Captain A's actions were done for an improper purpose.

(d)   Student 1's Statement:

Any posts made by Student 1 were not defamatory.

**2.   Informal Disclosures**

The parties have agreed that initial disclosures required by Rule 26(a)(1) shall be made on or before November 7, 2023 in advance of the Rule 16 Conference with the Court scheduled for November 16, 2023.

---

[2] On August 7, 2023, the Court dismissed with prejudice Plaintiff's intentional infliction of emotional distress (Count IV) against the Haverford Defendants. (*See* ECF No. 47).

3.     **Formal Discovery**

The Parties request that formal discovery commence following the Rule 16 Conference with the Court on November 16, 2023 and continue for a period of 180 days until May 14, 2024. The proposed discovery period will also allow for the entrance of a protective order addressing confidentiality concerns under federal privacy laws applicable to education records before documents are produced, discussed more fully below. This time period also would allow the parties, if agreed and potentially worthwhile, to explore the possibility of settlement through alternative dispute resolution before commencing depositions.

The number of depositions anticipated to be taken by each party follows below, subject to additional facts learned during discovery. At least one party resides outside the Eastern District of Pennsylvania.

- The Haverford Defendants: The Haverford Defendants anticipate that they will seek to take Plaintiff's deposition.

- Captain A: Captain A also seeks to take Plaintiff's deposition. Further, Captain A seeks to depose Haverford's Title IX Coordinator, Defendant Coach 1, the individual who shared the allegation with Captain A, and the individual at the center of the allegation.

- Student 1: Student 1 will also depose Plaintiff along with a student believed to have complained to Haverford College about an incident involving Plaintiff. To the extent there are any other individuals discovered to have information about assault allegations against Plaintiff, Student 1 will seek to depose them as well.

- Plaintiff: Plaintiff anticipates taking the depositions of Coach 1, Captain A, Student 1, potentially 12 other current or former Haverford students, Haverford's Title IX

Coordinator, Haverford's Director of Athletics, Haverford's Senior Associate Dean, a Haverford Advising Dean, Haverford's Dean of the College, and Haverford's President. This could total as many as 21 depositions, depending on the number of student depositions, including team members. Plaintiff anticipates that some depositions of former teammates may need to occur outside of the Eastern District of Pennsylvania if all parties cannot agree to remote depositions.

The parties anticipate confidentiality issues arising from Plaintiff's anonymity and regarding student education records. To that end, the parties will discuss a protective order during the course of discovery related to potential issues arising from federal privacy laws and confidentiality concerns regarding student information. To the extent any party seeks student records from the Haverford Defendants, the Haverford Defendants must comply with the Family Educational Rights and Privacy Act ("FERPA") which requires that Haverford provide notice to the affected students and an opportunity for them to object to the disclosure of their information. Due to the complexity of FERPA and student confidentiality concerns present in this case, the parties have agreed that no documents will be produced other than publicly accessible Haverford policies and procedures until a protective order is in place, and that the parties will work to provide the Court with a stipulated confidentiality order in due course. There may also be FERPA issues unique to Plaintiff regarding the production by the College of certain of his student records to the other Defendants. The parties are merely sensitizing the Court to the potential issue, which is best left to a later date when and if a concrete issue arises that the parties are unable to navigate and that will require the Court's attention.

Defendants anticipate a potential need to extend the time for the deposition of the Plaintiff beyond the 7-hour time limit set by the Federal Rules of Civil Procedure in light of the unique

10

51219616.3

nature of Plaintiff's claims against the Haverford Defendants, on one hand, and Student 1 and Captain A, all of which arise from related but independent circumstances. The parties will meet and confer on that issue with the hope of avoiding the need for the assistance of the Court.

    **4.    Electronic Discovery**

The parties have conferred regarding discovery of electronically stored information ("ESI") and understand their respective obligations to preserve ESI. The parties have agreed to produce ESI in Bates-stamped, text-searchable PDF format. For scanned hard copy documents, optical character recognition ("OCR") text must be included. The parties further agree that documents that contain privileged information or attorney work product shall be immediately returned if it appears that the documents have been inadvertently produced or if there is notice of inadvertent production and that all copies of such documents shall be destroyed by the receiving party.

    **5.    Expert Witness Disclosures**

The parties have agreed that expert reports, if any, shall be produced by June 13, 2024. Rebuttal expert reports, if any, shall be produced by July 15, 2024. Expert depositions shall take place within thirty (30) days after the deadline for production of rebuttal expert reports.

    **6.    Insurance Coverage**

To be provided per Rule 26(a) Disclosures.

    **7.    Settlement or Resolution**

The parties have discussed alternative dispute resolution as required by Local Rule 53.3. By way of background, after the Court's ruling on Haverford's motion to dismiss, Haverford's counsel contacted Plaintiff's counsel about whether it would make sense to see if the matter could be resolved prior to answering the complaint, or beginning discovery. To that end, Haverford requested that Plaintiff make a demand, which he did and shared it with all parties because Plaintiff

11

believed that, if the matter were to settle, it needed to be done on a global basis. Despite discussions with all parties regarding the demand, no party has made an offer in response. In the absence of a response, it is Plaintiff's position that being referred to a mediator at this stage would be unproductive. Plaintiff would like to begin document discovery and would be open to revisiting the possibility of considering alternative dispute resolution if Haverford were to respond with an offer, or once document discovery is substantially complete but before beginning depositions.

The Defendants are, on balance, in favor of being referred to a magistrate judge now. Defendants dispute that Plaintiff has provided a complete demand inasmuch as Plaintiff's monetary demand also referenced additional nonmonetary components Plaintiff has not yet articulated. Plaintiff did set forth non-monetary components of a settlement in addition to his monetary demand, but made clear that he did not believe it would be productive to spend attorney time and fees working to refine the details of the non-monetary components without some sense that there was progress regarding the monetary component of his demand. Haverford Defendants are agnostic as to the timing of mediation, but note that in the interest of an early resolution they have informed Plaintiff that they would be willing to engage in mediation immediately following the Rule 16 conference, and have further committed to provide a counter in that context where the presence of a magistrate would assist in providing certainty regarding the scope of Plaintiff's demand. Defendants have also offered to engage in narrow pre-mediation discovery to facilitate early mediation, but Plaintiffs have not agreed to this approach.

Plaintiff's position is that Haverford does not need Plaintiff's agreement if Haverford wishes to share information or documents it believes may help to facilitate settlement.

### 8. Trial date

The parties submit that it is premature for the parties to identify a range of viable trial dates. The parties defer to the Court should it prefer to schedule a date certain.

9. **Length of Trial**

The parties anticipate trial will last seven days.

10. **Other Matters**

No additional matters were identified.

51219616.3

Respectfully Submitted,

Date: November 10, 2023

/s/*Joshua W. B. Richards*
Joshua W. B. Richards
Levi R. Schy
Saul Ewing LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA  19102
(215) 972-7737 (Richards)
(215) 972-7803 (Schy)
Joshua.Richards@saul.com
Levi.Schy@saul.com
*Attorneys for Haverford Defendants*

/s/*Patricia M. Hamill*
Patricia M. Hamill
Jonathan Z. Cohen
Clark Hill
Two Commerce Square
2001 Market Street, Suite 2620
Philadelphia, PA 19103
phamill@clarkhill.com
jcohen@clarkhill.com
*Attorneys for Plaintiff John Doe*

/s/*Joseph McCool*
Joseph McCool
Montgomery McCracken Walker & Rhoads LLP
1735 Market Street, 19th Floor
Philadelphia, PA 19103
jmccool@mmwr.com
*Attorney for Captain A*

/s/*Kevin M. Siegel*
Kevin M. Siegel
The Law Offices of Kevin M. Siegel
One Greentree Centre
10000 Lincoln Drive East
Marlton, NJ 08053
kevin@kmslawgroup.com
*Attorney for Student 1*

14

51219616.3