**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOHN DOE, | ) |
| | ) |
| Plaintiff, | )  No.: 2:23-cv-00299-GAM |
| vs. | ) |
| | ) |
| HAVERFORD COLLEGE et al., | ) |
| | ) |
| Defendants. | ) |

## BRIEF IN SUPPORT OF PLAINTIFF'S EXPEDITED MOTION FOR STAY AND PROTECTIVE ORDER AS TO FEBRUARY 13, 2024 DEPOSITION

### Introduction

Plaintiff John Doe hereby moves the Court, pursuant to Federal Rule of Civil Procedure 26(c)(1), for entry of a protective order deferring his deposition on February 13, 2024 until the Court resolves the Motion for Protective Order and for *In Camera* Hearing on Behalf of Intervening Student Doe (ECF 69) filed on February 7, 2024. Plaintiff also requests entry of a stay of the deposition pending a decision on his motion. Plaintiff respectfully requests a decision from the Court by the close of business on Monday, February 12, 2024.

Essential discovery—which would be the subject of Plaintiff's deposition—remains undisclosed to Plaintiff by Defendants, making almost certain both that he would be subject to wide-ranging interrogation with no evident relevance to his claims or to Defendants' defenses and that his deposition would not be completed in one day, thereby setting the stage for Defendants' likely forthcoming motion for further deposition days and time. Despite Plaintiff's efforts to meet and confer concerning the timing of the deposition, and despite the lack of prejudice to any Defendant of a deferral, Defendant Captain A, the issuer of the deposition

notice, is and remains unwilling to schedule the deposition to a time convenient for Plaintiff and counsel and that makes sense in the context of this case. Entry of a protective order is warranted.

Moreover, on February 7, 2024, "Intervening Student Doe" filed a motion (i) seeking to prevent the production of documents in the College's possession relevant both to this case generally and to Plaintiff's deposition in particular, and (ii) seeking a stay of discovery.[1] (ECF 69.) That student claims (falsely) to have been a victim of Plaintiff at Haverford, but declined to file a complaint with the College. (ECF 69 at 5). The records relating to this student that Haverford is holding back appear to be highly relevant to this case. Even if the Court were to deny this motion promptly, and the College were to produce the documents to Plaintiff promptly thereafter, there would be insufficient time for Plaintiff and counsel to digest the documents, and prepare adequately for deposition. And even if they somehow could, other key documents and information remain withheld from Plaintiff.

As described in part in Plaintiff's opposition to Defendants' recent unsuccessful motion for an *ex ante* expedited order to force Plaintiff to sit for a 14-hour deposition (ECF 67), Defendants have engaged in various attempts to impose undue discovery burdens and costs on Plaintiff and his family. The attempt to force Plaintiff to sit for a deposition fully *three months before* the May 13th close of fact discovery in this case, before Defendants have produced to Plaintiff the most critical documents and information in this case, not to mention before any other depositions have even been scheduled, is simply another such attempt. Specifically, it is a direct attempt to engage in deposition by ambush and a roundabout attempt to, yet again, force

---

[1] Upon learning on Wednesday of the potentially pending motion, Plaintiff's counsel reached out to meet and confer with Intervening Student Doe's attorney to attempt to head off the filing of the motion and to prevent the delay in the production of documents, including by agreeing to meet every condition intervenor's counsel demanded and to convene the other parties to attempt to reach agreement as to the confidentiality of the documents. *See* Ex. A at 2. Nevertheless, intervenor's counsel filed the motion.

Plaintiff to be deposed for more hours and on more days than is permitted under the standard one-day, seven-hour deposition limit of Federal Rule of Civil Procedure 30(d)(2), which is already well more than is actually needed for Defendants to fully examine Plaintiff on the limited lines of inquiry raised by his claims. The Court should not countenance such gamesmanship.

This attempt also runs counter to the ordinarily collaborative and collegial discovery custom and practice in this district—in particular with regard to the scheduling and taking of depositions—as well as to the Court's guidance and expectation that discovery proceed in an orderly fashion with a minimum of motion practice. (ECF 68 (referring counsel again to Court's Guidelines, specifically American College of Trial Lawyers Code of Pretrial Conduct, which itself states on page 8 that lawyers should conduct discovery "not for an improper purpose, such as to harass, intimidate, unduly burden another party" and that "[w]hen a discovery dispute arises, opposing lawyers must attempt to resolve the dispute by working cooperatively together")). Moreover, it undermines the possibility of successful mediation before the beginning of depositions that the parties contemplated as a possibility at the outset (though without settling on an agreed approach), as was described in the Rule 26(f) Report. (ECF 56 at 12 ("Plaintiff would like to begin document discovery and would be open to revisiting the possibility of considering alternative dispute resolution if Haverford were to respond with an offer, or once document discovery is substantially complete but before beginning depositions" and "Defendants have also offered to engage in narrow pre-mediation discovery to facilitate early mediation….")). It goes without saying that successful mediation would be a benefit not only to all of the parties but to the Court.

**Factual Background**

On December 7, 2023, while the parties were still negotiating a draft protective order, before the exchange of any documents (other than publicly available College policies and the College's liability insurance policy) or other discovery, without Plaintiff having even been informed of the identity of any purported victim(s) or the circumstances of any purported assault(s), and without any meet-and-confer process regarding the availability of deponents or counsel, Defendant Captain A unilaterally noticed Plaintiff's deposition for January 16, 2024, later amending the date to January 22, 2024. *See* Ex. A at 11. Plaintiff initially responded by suggesting that all deposition dates be discussed and agreed to among counsel and the parties, as is the customary practice, and noted that the discovery deadline was still four and a half months away, that no documents had been exchanged yet, and that Plaintiff still did not have confirmation of who had accused him of sexual misconduct. *See id.* at 10-11.

Plaintiff followed up by noting that no Defendant had disclosed the date or location—or provided any details whatsoever—of any purported assault or provided any basis of any kind for their statements about Plaintiff in connection with any purported assault and that Captain A's and Student 1's interrogatory responses were deficient in that regard. Plaintiff also objected that Defendants' approach to taking Plaintiff's deposition without having provided him with essential documents and information concerning the allegation against him raised concerns about potentially improper motives. In particular, the uncollaborative approach appeared designed to facilitate deposition by ambush, to permit improperly intrusive and irrelevant deposition questioning, and to lay the groundwork for an attempt to force Plaintiff to sit for multiple depositions. As Plaintiff noted, the discovery process is designed to prevent, not facilitate, litigation by ambush and surprise. *See id.* at 8-9.

4

Plaintiff nevertheless met and conferred in good faith and stated that, assuming document and written discovery were substantially complete, he was prepared to make himself available for a single day of deposition as to all Defendants on a date to be determined between February 12 and 18, still three months before the close of discovery.[2] *See id.* at 8-9. Captain A did not agree to Plaintiff's conditions and stated that he and the other Defendants further insisted on Plaintiff making himself available for *fourteen hours* of deposition between February 12 and 18. *See id.* at 5-7. Plaintiff did not agree, believing that any deposition longer than at most seven hours, if that, was unwarranted. *See id.* at 3. But in an ultimately unsuccessful attempt to avoid burdening the Court with motion practice, he nevertheless offered to make himself available for an additional one-and-a-half hours above and beyond the requirements of Rule 30(d)(2) on a single mutually agreeable date between February 12 and 18, again *assuming agreement as to reasonable guidelines designed to prevent deposition by ambush and multiple depositions of Plaintiff*—specifically the substantial production of all documents and written discovery and the confirmed agreement of all Defendants.[3] *See id.* at 3-4. Plaintiff's offer was ignored, and no Defendants accepted it. Instead, on January 23, Captain A issued a revised notice of deposition of Plaintiff for February 13. *See* Ex. B.

In the intervening time, not all Defendants have substantially completed their discovery obligations. As of the time of this filing, despite the entry of the protective order on January 23, 2024 that is designed to preserve the anonymity of current and former students and the

---

[2] At the same time, Plaintiff sought from respective counsel dates on which Captain A and Student 1 are available for deposition, the ordinary process in this district for working collaboratively to schedule depositions on mutually agreeable dates. Counsel for Captain A ignored that request.

[3] Plaintiff advised that if Defendants' incomplete discovery responses rendered a deposition between February 12 and 18 unlikely to be productive or likely to proceed in a manner that unreasonably annoyed, embarrassed, or oppressed Plaintiff, Plaintiff might have to move for a protective order to allow his deposition to go forward at a later time when the record was more developed. *See* Ex. A at 4.

confidentiality of sensitive documents and information, Plaintiff has not received a full document production from the College. Nor has Plaintiff received a full document production from Defendant Coach 1. Plaintiff has received only a limited and incomplete document production and incomplete interrogatory responses from Defendant Captain A. And from Defendant Student 1, Plaintiff received *only yesterday* an initial and incomplete production of documents and only incomplete responses to interrogatories that did not name any purported victim or the circumstances of any purported assault. Notwithstanding these failures, Plaintiff himself has made substantial production of documents to all Defendants.

Most critically, Plaintiff has still not received from the College the central information that is at the core of this case, including: (i) confirmation of the identity of any purported victim(s) or (ii) the circumstances of any purported assault(s) purportedly committed by Plaintiff; (iii) written communications and notes of oral communications between any purported victim(s) and the College, including the College's Title IX Office; or (iv) other College records concerning any purported assault(s). Plaintiff maintains and has always maintained that he never assaulted anyone while he was a student at the College or at any other time. He has been seeking for more than two years, during more than half of which time this federal lawsuit has been pending, to obtain from the College the identity of any purported victim(s) and the circumstances of any purported assault(s), still to no avail. Plaintiff has not received from the College any documents or any other discovery to that effect. Nor has Plaintiff received from the College any communications whatsoever between any current or former student (other than Plaintiff) and any employee or agent of the College, including the College's Title IX Office and Administrator or any Title IX files.

Plainly Defendants intend to depose Plaintiff as to any purported contact he had with any purported victim(s). The facts surrounding that issue are relevant to Plaintiff's remaining four claims of defamation, breach of contract, intentional infliction of emotional distress, and tortious interference with contract. By withholding the essential documents and other key discovery, Defendants are both (i) setting up an ambush, whether by improperly and irrelevantly seeking to inquire as to any or every physical or sexual contact that Plaintiff may have had at any point in time with any other College student and/or by examining him on documents not produced but shown for the first time in deposition or referred to for purposes of questioning but not shown to Plaintiff; and (ii) trying to create a record whereby the College or other Defendants seek to depose Plaintiff a second or third time on the basis that they need an independent crack at him and/or the opportunity to examine him on subsequently produced documents and information. Through their recent joint motion for additional days and hours of deposition time (ECF 60), which was denied, Defendants have already indicated their desire to do so.

## Argument

The Court may, for "good cause," issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" during discovery. Fed. R. Civ. P. 26(c)(1) (noting that court may "specify[] terms, including time and place . . . , for the . . . discovery"). Here, good cause exists to grant a protective order deferring the deposition of Plaintiff on February 13, 2024 until the Court resolves the Motion for Protective Order and for *In Camera* Hearing on Behalf of Intervening Student Doe (ECF 69).

Good cause exists because, as described in detail above, as of the date of this filing, there are essential documents and core information in the possession of the Defendants—and in particular the College—that have not been provided to Plaintiff and about which Defendants

7

intend to depose him.[4] Defendants could use this informational asymmetry to ambush Plaintiff, first, by attempting wide-ranging and improper and irrelevant questioning of Plaintiff and, second, by presenting and examining him with respect to documents not previously produced to him. Defendants also could use Plaintiff's resulting objections to try to establish a basis for subsequent repeat deposition of Plaintiff. Alternatively, or perhaps in addition, Defendants who did not notice Plaintiff's deposition (the College, Coach 1, and Student 1) could choose not to depose Plaintiff as to these topics and seek additional deposition time at a later date. And Defendants recently implied in their motion for additional deposition time a belief, contrary to Rule 30(d)(2), that *each* Defendant has a right to seven-hours of deposition time with Plaintiff. (ECF 60 at 5 ("In the ordinary course, any individual party-defendant would have seven hours to depose a plaintiff . . . .")).

But, as Plaintiff noted in his opposition, the existence of multiple parties simply means that the parties need to coordinate cooperatively. (ECF 67 at 6). Consequently, "parties with similar interests should strive to designate one lawyer to question about areas of common interest…." *Nicholas v. Wyndham Int'l, Inc.*, No. 01-147, 2002 WL 32359953, *1 (D.V.I. Nov. 18, 2002) (noting that "the seven hour limitation is applicable to multiple party opponents"). Accordingly, it is incumbent upon Defendants to determine "how defendants would share such allotted time." It is emphatically not incumbent on Plaintiff to make himself available for repeat

---

[4] Plaintiff acknowledges that "methods of discovery may be used in any sequence" under Rule 26(d)(3)(A) and does not argue that written discovery must proceed before deposition discovery as a general matter. Rather, he argues that the particular discovery Defendants seek—Plaintiff's deposition on February 13—is oppressive and burdensome in the context of this case, given the essential information and documents that Defendants have withheld from him and the likelihood that Defendants are abusing the discovery process to ambush him and to lay the foundation for future motions for additional depositions, and given the existence of more than three months before the close of fact discovery and the lack of prejudice to Defendants of a deferral.

depositions simply because there is more than one Defendant or because he has not been provided with core documents and information that will be the subject of his deposition.

Of course, none of this is proper. Litigation is not meant to be conducted by ambush and surprise. It is not meant to be a game of "gotcha" or "hide the ball" but rather a fair process by which adversarial parties obtain information relevant to their claims and defenses to create a level playing field of information. That is among the reasons that the Federal Rules and the courts, including this Court, typically expect and enforce collegial behavior, even among adversaries, in pursuing discovery. *See, e.g.*, *Simmons v. American Airlines, Inc.*, 2003 WL 22768258 (D.V.I. Nov. 7, 2003) (granting protective order with regard to defendants' unilaterally noticed depositions of plaintiff's experts). The court in *Simmons* noted that "cooperative discovery arrangements in the interest of reducing delay and expense are encouraged." *Id.* at *1.

Moreover, there is no exigent need for a deposition of Plaintiff three months before the close of fact discovery, during a time in which the parties, and an intervenor, are attempting to resolve disputes with respect to written discovery. Counsel for Captain A has provided no response to Plaintiff's request for an explanation as to his seeming need to depose Plaintiff now and his unwillingness to depose Plaintiff at a later date, after Plaintiff has been provided with the essential information and documents. *See* Ex. A at 6-9. In fact, there is no urgency, and no Defendant will be prejudiced by a later deposition of Plaintiff, other than losing the ability to ambush him with information that he does not have and to lay the groundwork for future motions for repeat depositions. In short, the rush to depose Plaintiff before providing him with essential information about which he will be deposed is simply a further attempt to impose undue discovery burdens and costs on Plaintiff and his family.

Accordingly, Plaintiff's motion should be granted because Plaintiff has demonstrated good cause for entry of a protective order precluding his deposition on February 13, 2024, and deferring it to a later date—following resolution of Intervening Student Doe's Motion for Protective Order (ECF 69)—to be agreed to among the parties and counsel. Deferral of the deposition will result in no prejudice to Defendants.

        Respectfully submitted,

        **CLARK HILL PLC**

        */s/ Jonathan Z. Cohen*
        Patricia M. Hamill/48416
        Jonathan Z. Cohen/205941
        Two Commerce Square
        2001 Market Street, Suite 2620
        Philadelphia, PA 19103
        (215) 864-8071 (Hamill)
        (215) 422-4426 (Cohen)
        phamill@clarkhill.com
        jcohen@clarkhill.com

Date: February 9, 2024

**CERTIFICATE OF SERVICE**

I, Jonathan Z. Cohen, hereby certify that on the date set forth below, the foregoing document will be filed electronically and made available for viewing and downloading from the ECF System. Service will be made electronically on the following persons:

Patricia M. Hamill
phamill@clarkhill.com

Joseph P. McCool
jmccool@mmwr.com

Joshua W.B. Richards
joshua.richards@saul.com

Levy R. Schy
levy.schy@saul.com

Kevin M. Siegel
kevin@kmslawgroup.com

Mark D. Schwartz
MarkSchwartz6814@gmail.com

*/s/ Jonathan Z. Cohen*
Jonathan Z. Cohen, Esq.

Date: February 9, 2024